IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **PAIGE McIVER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:26-cv-01188** |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **ASURION INSURANCE SERVICES, INC.,** | ) | **Judge William L. Campbell, Jr.** |
| | ) | |
| | ) | **Magistrate Judge Lynda M. Hill** |
| **Defendant.** | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFF'S CLAIMS OR, IN THE ALTERNATIVE, TO STAY THE ACTION PENDING THE COMPLETION OF ARBITRATION**

Plaintiff Paige McIver respectfully submits this Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss Plaintiff's Claims or, in the Alternative, to Stay the Action Pending the Completion of Arbitration. (Doc. 9).

## INTRODUCTION

Paige McIver reported that a franchise district manager operating Asurion-branded stores bragged about how he "broke the virginity" of a local restaurant owner, showed employees nude videos of a female customer inside the store, and said he wished to drag a homeless Black woman "by her nappy ass head." (Doc. 1, ¶¶ 41-47). She reported all three incidents to her supervisor. (*Id.* at ¶ 51). When nothing happened, she escalated to Asurion's Legal and Human Resources departments. (*Id.* at ¶¶ 58-59). Asurion never interviewed her, never contacted her while the matter was open, imposed no consequence on the manager, and told her in March 2025 that the investigation was closed. (*Id.* at ¶¶ 63-67).


Case 3:26-cv-01188 Document 11 Filed 09/24/26 Page 1 of 19 PageID #: 56

What followed is the subject of this lawsuit. Asurion required her to send her post-visit reports to a second manager, assigned another manager to cover her franchise locations, and began questioning her performance. (*Id.* at ¶¶ 69-73). On April 25, 2025, it accused her of smelling of marijuana and alcohol. (*Id.* at ¶ 89). She denied the accusation and consented to a drug test. (*Id.* at ¶¶ 90, 94). She then suffered a panic attack, lost consciousness, and was taken to an emergency department. (*Id.* at ¶¶ 100-103). Asurion texted that her employment was at risk, suspended her without pay, and called her absence job abandonment. For much of the time those messages arrived, she was unconscious or under emergency medical care. (*Id.* at ¶¶ 112-115). It revoked her system access, which made the consent form it demanded she sign unreachable. (*Id.* at ¶¶ 116-119). It never administered a drug test. (*Id.* at ¶ 121). It fired her on May 14, 2025, one day after her initial FMLA leave request ended and nineteen days before the date her provider had set to reassess her ability to return. (*Id.* at ¶¶ 163, 169-170).

Asurion now asks this Court to send the case to a private arbitrator. Two independent problems stand in the way.

First, Asurion has not given the Court the contract. Its Memorandum quotes and cites "Ex. A" throughout. (Doc. 10 at 2-3, 8-10). No such exhibit appears on the docket. Asurion filed no copy of the Agreement, no declaration, and no authenticating witness. The Court cannot assure itself that the parties agreed to arbitrate when the agreement is not before it.

Second, and dispositively, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 makes the Agreement unenforceable as to this entire case. In *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 385-86 (6th Cir. 2026), decided in February 2026, the Sixth Circuit held that where a plaintiff brings several claims in one suit and the case relates to a sexual harassment dispute, the EFAA renders a predispute arbitration agreement unenforceable as to

every claim in the case. *Bruce* also rejected the precise argument Asurion leads with, holding that the federal policy favoring arbitration is a canon of contract interpretation and does not govern construction of the EFAA. *Id.* at 384. This case relates to a sexual harassment dispute. Count VII alleges Asurion retaliated against Ms. McIver for reporting sexual harassment, and Asurion answers for that retaliation directly. Asurion's Memorandum does not mention the EFAA or *Bruce*.

Ms. McIver hereby elects, under 9 U.S.C. § 402(a), to render the Agreement invalid and unenforceable as to this case.

## BACKGROUND

Ms. McIver filed this action on August 19, 2026. (Doc. 1). She asserts four claims under the Americans with Disabilities Act, two claims under the Family and Medical Leave Act, and one claim under Title VII of the Civil Rights Act of 1964. (*Id.* at ¶¶ 176-266).

Count VII alleges retaliation under 42 U.S.C. § 2000e-3(a). (*Id.* at ¶¶ 246-266). It pleads that the district manager's conduct "constituted sexual harassment and racial harassment," that Ms. McIver "reasonably and in good faith believed the conduct violated Title VII," that she opposed the conduct by reporting it to her supervisor and by escalating it to Asurion's Legal and Human Resources departments, and that Asurion took materially adverse actions against her afterward. (*Id.* at ¶¶ 250-263).

Asurion filed its Motion on September 10, 2026. (Doc. 9). Asurion represents that Ms. McIver executed an Employment, Confidential Information, Invention Assignment, and Arbitration Agreement on September 18, 2021. (Doc. 10 at 2). Asurion represents that the Agreement defines "the Company" as Asurion, LLC together with its "subsidiaries, affiliates, successors or assigns," and that Defendant Asurion Insurance Services, Inc. is a subsidiary and affiliate of Asurion, LLC. (*Id.* at 3). Asurion also represents that the Agreement "expressly carves

out 'any issues related to the enforceability of this Agreement' from the disputes the parties agreed to arbitrate." (*Id.* at 8). None of these representations is supported by a filed document.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act permits a party to petition for an order compelling arbitration "under a written agreement for arbitration." 9 U.S.C. § 4. To grant such a motion, "a district court must assure itself that (1) the parties agreed to arbitrate; (2) the claims asserted fall within the scope of the arbitration agreement; and (3) Congress did not intend for those claims to be non-arbitrable." *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 404 (6th Cir. 2025), *quoted in Bruce*, 168 F.4th at 375.

Whether the EFAA applies "shall be determined by a court, rather than an arbitrator," and federal law governs that determination. 9 U.S.C. § 402(b). Asurion agrees that enforceability is for this Court. (Doc. 10 at 8).

## ARGUMENT

### I. Asurion has not placed the Agreement before the Court.

A motion to compel arbitration asks a federal court to send a federal civil rights case out of the federal courts. The party making that request bears the burden of proving the agreement. The Sixth Circuit assesses the request under the standards of Rule 56. "Under Rule 56," the moving party has "the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract," because it bears "the burden of proof on its contract claim under § 4." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021).

Asurion cites *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002), for the rule that the party resisting arbitration must show a genuine issue of material fact. (Doc. 10 at 4). That

rule presupposes evidence to dispute. Under *Boykin*, the moving party must supply that evidence first. *Boykin*, 3 F.4th at 839.

Asurion did not. Its Memorandum cites "Ex. A" seven times and quotes language it attributes to Sections 1 and 9 of the Agreement. (Doc. 10 at 2-3, 8-10). Nothing is attached to the Motion or to the Memorandum. The docket reflects no exhibit, no declaration, and no affidavit. The Motion and Memorandum occupy PageID ## 41 through 55, and those pages include no exhibit. The quoted language appears in this record only as unsworn assertion in a brief.

The contrast with *Bruce* is instructive. There, the employer "included with its motion to compel arbitration a declaration from its director of human resources, which in turn attached a 2022 arbitration agreement." *Bruce*, 168 F.4th at 375. That record permitted the court to find that the parties had entered into the agreement and that the first two *Memmer* requirements were met. *Id.* This record does not.

The same gap reaches the question of who may enforce the Agreement. Asurion says the Agreement names Asurion, LLC, extends to its affiliates, and reaches Defendant as one of them. (Doc. 10 at 3). Asurion offers no evidence for any of those statements.

The Motion should be denied on this ground. If Asurion attempts to cure the gap by filing the Agreement with its reply, Ms. McIver requests leave to respond to that evidence. If her response puts the making of the Agreement in issue, the Court must "proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Boykin*, 3 F.4th at 837.

The balance of this Response assumes, for argument only, that Asurion could make the showing it has not made. Even on that assumption, the Motion fails.

### II. The EFAA makes the Agreement unenforceable as to this entire case.

#### a. The statute.

The EFAA, Pub. L. No. 117-90, 136 Stat. 26 (2022), is codified at 9 U.S.C. §§ 401-402 and comprises the "chapter 4" referenced in Section 2 of the FAA. *Bruce*, 168 F.4th at 372. It is therefore an exception to the FAA's rule that arbitration agreements are enforced according to their terms. *Id.*

Section 402(a) provides:

> "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute."

9 U.S.C. § 402(a).

A "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

#### b. *Bruce* holds the EFAA reaches the entire case.

The Sixth Circuit addressed the scope of Section 402(a) as a matter of first impression in February of this year. Its holding is unqualified:

> "[W]here a plaintiff brings multiple claims in a single suit against a party with whom she has an otherwise-valid arbitration agreement, and one of those claims alleges a "sexual assault dispute" or a "sexual harassment dispute," the EFAA renders the arbitration agreement unenforceable with respect to each of the claims that comprise her case."

*Bruce*, 168 F.4th at 385-86.

The court grounded that holding in the statutory text. The operative word in Section 402(a) is "case," because it is "with respect to a case" that an otherwise valid agreement becomes

unenforceable. *Id.* at 382. "All data point clearly in the direction of 'case' encompassing a plaintiff's entire suit." *Id.* Black's Law Dictionary defines "case" as "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity," and the FAA itself uses the word that way. *Id.* By contrast, "claim" denotes a single demand for relief, and "claims are the component parts of a suit, case, or action." *Id.* (internal quotation marks omitted).

The court identified three drafting paths Congress could have taken to limit the EFAA to harassment claims alone, and observed that Congress took none of them. *Id.* at 383-84. Congress could have written "claim" instead of "case." *Id.* at 383. Congress could have struck the words "a case which is filed under Federal, Tribal, or State law and relates to the," leaving an agreement unenforceable only as to the harassment dispute itself. *Id.* Congress could have copied the language used in numerous whistleblower statutes barring arbitration only of "a dispute arising under this section." *Id.* at 383-84.

*Bruce* is binding on this Court. It resolves the scope question against Asurion.

**c. This case relates to a sexual harassment dispute.**

The remaining question is whether Ms. McIver's case "relates to" a "sexual harassment dispute." Two facts could be offered as reasons it does not. Ms. McIver was not the target of the conduct she reported. And the manager who engaged in it worked for a franchisee. Neither fact defeats the Act. The statute turns on the conduct alleged, and *Bruce*'s discussion of vicarious liability does not reach a retaliation claim.

**1. The Act turns on the conduct alleged, not on its target.**

A "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The definition asks two questions. What conduct is alleged? Is that conduct sexual harassment under applicable

law? It does not ask at whom the conduct was aimed. It does not ask who employed the person who engaged in it.

The operative provision reads the same way. The election belongs to "the person alleging conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). Congress did not limit the election to the person subjected to the conduct. It gave the election to the person who alleges it.

Ms. McIver acknowledges the reported decisions applying the Act have involved plaintiffs who were themselves targets of the harassment. Plaintiff has found no decision addressing an employee who reported sexual harassment directed at others. The question is therefore one of statutory text. The text contains no target requirement.

**2. The conduct Ms. McIver reported is alleged to constitute sexual harassment under federal law.**

Two of the three incidents Ms. McIver reported were sexual. Myles described how he "broke the virginity" of a local restaurant owner, a woman. (Doc. 1, ¶¶ 42-43). On a later visit, Ms. McIver saw him show store employees nude videos of a female customer. (*Id.* at ¶ 44). He displayed the videos inside the store, in the presence of store employees. (*Id.* at ¶ 45).

Federal law defines sexual harassment to reach this conduct. "Harassment on the basis of sex is a violation of section 703 of title VII." 29 C.F.R. § 1604.11(a). "[V]erbal or physical conduct of a sexual nature" constitutes sexual harassment when it "has the purpose or effect of . . . creating an intimidating, hostile, or offensive working environment." *Id.* Playing nude videos of a woman for employees inside a store is conduct of a sexual nature in a working environment. So is a manager's boast, during a store visit, about taking a woman's virginity. Each is conduct "alleged to constitute sexual harassment under applicable Federal . . . law." 9 U.S.C. § 401(4).

The third incident was Myles's statement about a Black woman living behind the store. (Doc. 1, ¶¶ 46-48). That statement is racial harassment. It supports Count VII, but Ms. McIver does not rely on it to invoke the Act.

Asurion may respond that two incidents would not sustain a hostile work environment claim. No one asserts that claim here. Section 401(4) asks whether conduct is "alleged to constitute sexual harassment." It does not ask whether a hostile environment claim built on that conduct would succeed. The claim Ms. McIver does assert does not require that showing either. An employee who opposes harassment "need not prove that the environment he complained of was actually hostile in order for the employee to receive protection from retaliation under Title VII." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015). The opposition must rest on "a reasonable and good faith belief that the opposed practices were unlawful." *Id.* (internal quotation marks omitted). Objective reasonableness is decided as a matter of law "only when no reasonable person could have believed that the facts known to the employee amounted to a violation." *Id.* (internal quotation marks omitted). Ms. McIver pleads her belief and the facts that make it reasonable. (Doc. 1, ¶¶ 42-45, 49-50).

**3. Count VII relates to that dispute.**

A retaliation claim premised on reporting sexual harassment falls within the Act. Every court to address such a claim has so held, although in each of those cases the plaintiff was also a target of the harassment. The Second Circuit called the contrary argument "meritless," reasoning that because retaliation for reporting discrimination is reasonably related to the underlying discrimination, "retaliation resulting from a report of sexual harassment is 'relat[ed] to conduct that is alleged to constitute sexual harassment.'" *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 92 (2d Cir. 2024) (quoting 9 U.S.C. § 401(4)). In a decision *Bruce* cited, the district court rejected the

argument Asurion would have to make here, explaining that "the test for whether the EFAA applies is not whether claims are 'inexorably intertwined' or 'rise or fall' together; it is whether the claim is or 'relates to' a sexual harassment dispute," and that on that test "the claim of retaliation for reporting sexual harassment is plainly covered." *Rix v. Polsinelli PC*, No. 23-03062, 2025 WL 2674767, at *7 (D.D.C. Sept. 18, 2025) (collecting cases), *cited in Bruce*, 168 F.4th at 381; *accord Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 551 n.13 (S.D.N.Y. 2023). Two decisions confirm that a retaliation claim standing alone is enough. In each, the plaintiff's harassment claims fell outside the Act on accrual grounds, and the retaliation claim by itself returned the entire case to court. *See Clay v. FGO Logistics, Inc.*, 751 F. Supp. 3d 3, 17, 20 (D. Conn. 2024) ("Clay's hostile work environment and sexual harassment claims did not accrue after the EFAA's effective date. But Clay's retaliation claim did. . . . Because Clay's retaliation claim is a sexual harassment dispute, and because the case as a whole relates to that dispute, I conclude that the EFAA bars enforcement of the arbitration agreement as to Clay's entire case."); *Molchanoff v. SOLV Energy, LLC*, No. 23-cv-653-LL-DEB, 2024 WL 899384, at *4-5 (S.D. Cal. Mar. 1, 2024) (same result where only the retaliation claim accrued after the effective date). Plaintiff has found no decision holding otherwise.

Count VII is precisely such a claim. Ms. McIver alleges she opposed conduct she reasonably and in good faith believed violated Title VII, that she reported it to her supervisor and escalated it to Legal and Human Resources, and that Asurion retaliated. (Doc. 1, ¶¶ 50-60, 251-265).

"Relates to" is expansive, and the connection here is direct. *Bruce* construed the phrase using its ordinary meaning: to "have some connection to." 168 F.4th at 382-83. The Supreme Court has held that one thing relates to another "if it has a connection with or reference to" that other

thing, and has described the term as "deliberately expansive." *Id.* at 383 (internal quotation marks omitted) (quoting *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 129 (1992)). The Sixth Circuit has likewise recognized the breadth of the phrase. *Id.* (citing *United States v. Fields*, 53 F.4th 1027, 1045 (6th Cir. 2022)).

Ms. McIver's case does not merely have "some connection to" the harassment she reported. The harassment is the causal predicate of Count VII. It is the reason she says Asurion turned on her. After she reported it, Asurion required her to send her post-visit reports to a second manager, assigned another manager to cover her franchise locations, and began questioning her performance. (Doc. 1, ¶¶ 69-73).

**4. *Bruce*'s vicarious liability holding does not reach a retaliation claim.**

*Bruce* does not hold otherwise. Its discussion of vicarious liability answers a different question: which allegations could support the plaintiff's own hostile work environment claim against her employer. The plaintiff there alleged harassment by the same man at a prior law firm, before either of them joined the defendant. The court declined to consider that conduct. It explained the plaintiff was "proceeding against A&R on a theory of vicarious liability," and "[v]icarious liability requires an employment or agency relationship between a defendant and a malfeasor." *Bruce*, 168 F.4th at 377-78. Because A&R "was neither Bruce's nor Pinson's employer when they worked at Waller, his conduct while there cannot be used to establish a claim against A&R under Title VII." *Id.*

That limit follows from the claim before the court. A hostile work environment claim asks the employer to answer for the harasser's conduct. Vicarious liability is the doctrine that makes the employer answer. Where the employer had no employment or agency relationship with the harasser, the harasser's conduct cannot be charged to it.

Count VII does not charge Myles's conduct to Asurion. It charges Asurion with its own conduct: what Asurion did to Ms. McIver after she reported. (Doc. 1, ¶¶ 256-263). Title VII forbids an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Asurion's liability turns on its own reasons for its own acts. It does not turn on whether Asurion is vicariously liable for Myles. The question *Bruce* answered at pages 377 and 378 does not arise on this claim.

Even if Asurion's relationship to Myles mattered, it could not be resolved against Ms. McIver on this Motion. uBreakiFix stores operate under the Asurion brand. (Doc. 1, ¶ 39). Some are corporate-owned and some are franchise-owned. (*Id.* at ¶ 40). Ms. McIver was the primary Asurion representative for her assigned sites, and she worked with franchise-owned stores in her territory. (*Id.* at ¶¶ 33, 37). When she reported Myles, Asurion did not treat him as a stranger. Her supervisor said he would speak with Myles, then directed her not to visit the stores Myles operated. (*Id.* at ¶¶ 53-54). Myles met with two Asurion managers to discuss her report. (*Id.* at ¶ 61). Asurion then told her the investigation was closed. (*Id.* at ¶ 67).

Federal law points to control as the relevant question. An employer "may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace," and the Commission considers "the extent of the employer's control" over those non-employees. 29 C.F.R. § 1604.11(e). The Complaint supports a plausible inference Asurion exercised control over the stores operating under its brand and over the manager running them. The extent of that control is a question of fact. Asurion has offered no evidence on it, and it cannot be resolved against Ms. McIver on the pleadings.

**d. The EFAA applies to this dispute in time.**

The EFAA applies to any dispute or claim arising or accruing on or after its date of enactment, March 3, 2022. Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022) (set out as a note to 9 U.S.C. § 401). Ms. McIver reported the harassment after store visits that began in February 2025, and Asurion told her in March 2025 that the investigation was closed. (Doc. 1, ¶¶ 38, 51, 67). Asurion suspended her on April 25, 2025, and terminated her on May 14, 2025. (*Id.* at ¶¶ 113, 163). Every event giving rise to this dispute postdates the EFAA's effective date by roughly three years. Timing presents no obstacle.

**e. Ms. McIver elects the protection of the statute.**

Section 402(a) operates "at the election of the person alleging conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). Ms. McIver makes that election here and now. The Agreement is therefore invalid and unenforceable with respect to this case.

**III. Whatever pleading standard governs the EFAA gateway, Ms. McIver satisfies it.**

*Bruce* expressly declined to decide what a plaintiff must do to "allege" a sexual harassment dispute under Section 402(a). The court identified two candidates. One is the plausibility standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), adopted in *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023). The other is the more forgiving standard of *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 542 (S.D.N.Y. 2024), which requires only that the conduct "be actually alleged and with sufficient specificity that the court is able to determine the law that is applicable and that there is a real and nonfrivolous reason to believe that the conduct violates that law against sexual harassment." *Bruce*, 168 F.4th at 376. The Sixth Circuit left the choice "for another day," because the plaintiff there prevailed under the higher bar and because she had forfeited any argument for a lower one. *Id.*

*Bruce* described the *Yost* plausibility standard as "the prevailing view of federal district courts that have analyzed the EFAA." 168 F.4th at 376. Ms. McIver does not dispute that, as the party invoking the Act, she must show it applies. She carries that burden through her pleading. *Bruce* decided the gateway question on the complaint, under the ordinary pleading standard. *Id.* at 377.

Unlike the plaintiff in *Bruce*, Ms. McIver raises the lower standard now. *See id.* at 376. The text supports it. Section 401(4) defines the dispute by conduct that "is alleged to constitute sexual harassment." 9 U.S.C. § 401(4). Section 402(a) gives the election to "the person alleging conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). Congress could have written "conduct that constitutes sexual harassment." It chose instead to key both provisions to what is alleged. Reading "alleged" to import Rule 12(b)(6) would require a court to test the merits of a claim before deciding which forum should hear it. The *Diaz-Roa* approach, which *Bruce* described as *Bell v. Hood*'s jurisdictional standard, avoids that step. *Bruce*, 168 F.4th at 376. It asks only whether the conduct is actually alleged, whether the applicable law can be identified, and whether there is a "real and nonfrivolous reason" to believe the conduct violates that law. *Id.*

Ms. McIver meets that standard. The conduct is actually alleged, with the month, the place, the speaker, and the words. (Doc. 1, ¶¶ 38, 41-45). The applicable law is Title VII and its implementing regulation. 29 C.F.R. § 1604.11(a). And the reason to believe the conduct violates that law is real, not frivolous, for the reasons given in Section II.c.2.

She meets *Yost* as well. *Yost* asks whether the sexual harassment allegations are plausibly pleaded. *Yost*, 657 F. Supp. 3d at 585. They are. Myles displayed nude videos of a woman to employees inside a store operating under the Asurion brand, on a visit Ms. McIver made as Asurion's representative. (Doc. 1, ¶¶ 33, 39, 44-45). He also boasted, during a store visit, about

taking a woman's virginity. (*Id.* at ¶¶ 42-43). Federal law treats "physical conduct of a sexual nature" as sexual harassment when it creates an "offensive working environment." 29 C.F.R. § 1604.11(a). The Supreme Court directs courts to ask whether conduct is "humiliating" or "a mere offensive utterance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Playing nude videos of a woman for an audience of employees at work is humiliating conduct, not a stray remark.

Asurion may answer that two incidents are too few. Frequency is one factor, not a threshold. Conduct is actionable when it is "sufficiently severe or pervasive." *Id.* at 21 (internal quotation marks omitted). More to the point, Ms. McIver does not need a winning hostile work environment claim. The dispute here concerns her opposition to the conduct. That opposition is protected if it rests on a reasonable, good-faith belief, and reasonableness is decided as a matter of law only when no reasonable person could have held the belief. *Yazdian*, 793 F.3d at 646. A reasonable person who watched a manager play nude videos of a woman for employees could believe the conduct was unlawful.

Count VII, the claim relating to that conduct, is plausibly pleaded as well. At the pleading stage a Title VII plaintiff is not required to plead a prima facie case. *Keys v. Humana, Inc.*, 684 F.3d 605, 609-10 (6th Cir. 2012); *cf. Ahmed v. Hamtramck Pub. Schs.*, 178 F.4th 975, 981 (6th Cir. 2026) (same rule for FMLA retaliation). The question is whether the complaint alleges sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that the plaintiff is entitled to relief. *Bruce*, 168 F.4th at 377 (citing *Keys*, 684 F.3d at 610). The Complaint here pleads specific incidents, specific words, and specific reports. It then pleads what followed: after her report, Asurion changed how she reported, assigned another manager to cover her locations, and questioned her performance; it

suspended her on April 25, 2025; and it fired her on May 14, 2025. (Doc. 1, ¶¶ 42-60, 69-73, 113, 163).

The Court therefore need not choose between *Yost* and *Diaz-Roa*. Ms. McIver meets both.

**IV. The presumption in favor of arbitration does not change the result.**

Asurion opens its argument with the "strong presumption in favor of arbitration" and the rule that doubts about arbitrability are resolved in favor of arbitration. (Doc. 10 at 3-4, 6). It cites *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003), and *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

*Bruce* considered and rejected that argument on the same authorities. The presumption "does not govern statutory interpretation." *Bruce*, 168 F.4th at 384. It is instead a rule for "applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement," under which ambiguities "as to the scope of the arbitration clause itself" are resolved in favor of arbitration. *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989)). Because the EFAA question is one of statutory construction and not of contract construction, the presumption has no work to do. *Id.*

The Sixth Circuit added that even if the FAA's contract principles did apply, a court could "not . . . reach a result inconsistent with the plain text . . . simply because the policy favoring arbitration is implicated." *Id.* (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)).

Any argument that arbitrability must be assessed claim by claim fails for the same reason. *Bruce* addressed that argument too and held that it "simply begs the question," because once the EFAA's plain language controls, "each claim that is a part of [the plaintiff's] case may remain in court, whether we take them claim-by-claim or as a whole." *Id.*

The authorities Asurion cites for the proposition that ADA, Title VII, and FMLA claims are arbitrable as a category are beside the point. (Doc. 10 at 10-11). Ms. McIver does not contend that Congress made these statutes categorically non-arbitrable. She contends that Congress made this agreement unenforceable as to this case. That is what the EFAA says, and that is what *Bruce* holds.

**V. Dismissal would be improper in any event.**

Should the Court reach the question, Asurion's request for dismissal is foreclosed. Asurion relies on the "judicially created exception" permitting dismissal where all claims are referred to arbitration, citing *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000), and *5th of July, LLC v. Thomas*, No. 3:19-cv-00994, 2020 WL 5983111, at *5 (M.D. Tenn. Oct. 8, 2020). (Doc. 10 at 6).

The Supreme Court has since held otherwise. "When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). Asurion has itself requested a stay in the alternative. (Doc. 9 at 2). Dismissal is therefore unavailable. Asurion's own authority points the same way. In *5th of July*, the court stayed the case pending arbitration rather than dismissing it, because the plaintiffs had "explicitly requested a stay." *5th of July*, No. 3:19-cv-00994, Doc. No. 48 at 11 (M.D. Tenn. Oct. 8, 2020). Ms. McIver makes the same request. If the Court compels arbitration of any claim, she asks the Court to stay this action under 9 U.S.C. § 3 rather than dismiss it.

## CONCLUSION

Asurion has not produced the agreement it asks this Court to enforce. Even if it had, and even assuming that agreement was validly formed, that it reaches these claims, and that this Defendant may invoke it, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act makes it unenforceable as to this entire case. The Sixth Circuit held in February 2026 that the Act reaches every claim in a case relating to a sexual harassment dispute, and it rejected the very presumption on which Asurion's Memorandum rests. This case relates to such a dispute. Count VII alleges Asurion punished Ms. McIver for reporting sexual harassment, and Asurion answers for that retaliation directly.

Ms. McIver respectfully requests that the Court deny Defendant's Motion in its entirety. In the alternative, if the Court compels arbitration of any claim, Ms. McIver requests that the Court stay this action under 9 U.S.C. § 3 pending arbitration.

Respectfully submitted,

**THE EMPLOYMENT & COMMERCE LAW GROUP**

*_/s/ G. BRANDON HALL_*________________________
G. BRANDON HALL, BPR No. 034027
1625 Broadway, Suite 601
Nashville, Tennessee 37203
(615) 850-0632
bhall@eclaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was served electronically via the Court's CM/ECF filing system this 24th day of September, 2026 to the following:

James A. Crumlin, Jr. (BPR No. 019760)
Brianna Griffin (BPR No. 041449)
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
jcrumlin@spencerfane.com
bgriffin@spencerfane.com

*Counsel for Defendant*

/s/ G. Brandon Hall
G. Brandon Hall