# EXHIBIT A

**EMPLOYMENT, CONFIDENTIAL INFORMATION,**
**INVENTION ASSIGNMENT,**
**AND ARBITRATION AGREEMENT**
**(*<u>WITH RESTRICTIVE COVENANTS</u>*)**

As a condition of my employment with Asurion, LLC, its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my employment with the Company, my receipt of the compensation now and hereafter paid to me by the Company, and my ability to access Confidential Information (defined below), develop goodwill with customers and/or receive specialized training by the Company, I agree to the following:

1. *Employment for Unspecified Duration.*

I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND UNLESS PROHIBITED BY LAW, CONSTITUTES "AT-WILL" EMPLOYMENT, WHICH MEANS THAT THIS EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF THE COMPANY OR ME, WITH OR WITHOUT NOTICE. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS OBTAINED IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF THE COMPANY (OR HIS/HER DESIGNEE).

*****FOR MONTANA EMPLOYEES ONLY: During my probationary period of employment, I understand and acknowledge that my employment may be terminated at the option of either the Company or me on notice to the other for any reason or for no reason. After my probationary period of employment, I understand and acknowledge that my employment only may be terminated for good cause.***

2. *Confidential Information.*

A. *Confidential Information.* During the period of my employment with the Company, I acknowledge that the Company has disclosed and will disclose to me Confidential Information (defined below) of the Company which the Company takes great pains to safeguard from unauthorized use and disclosure. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use or to disclose to any person, firm or corporation, except as such use or disclosure is required in connection with my work for the Company or unless the Chief Executive Officer of the Company (or his/her designee) otherwise expressly authorizes in writing, any Confidential Information (defined below). I understand and agree that "Confidential Information" means information, or a compilation of information, in any form (tangible or intangible), related to the Company's business that has not appropriately been made public and that is not generally known to the public or to other persons who might obtain value or competitive advantage from its disclosure or use, including (a) technical data, engineering and hardware configuration information, trade secrets, computer source and object code, programs, other works of authorship, developments, inventions, ideas, processes, formulae, techniques, designs, drawings, know-how, improvements, and discoveries, (b) plans or other information concerning the Company's research, products and services, sales and pricing, and

markets therefore, including without limitation, customer lists and contact information, customers and business partners (including, but not limited to, customers and business partners of the Company on whom I called or with whom I became acquainted during the term of my employment), marketing, finances or other business information, (c) information regarding the skills, compensation and career path and evaluations of the Company's employees, contractors, and any other service providers of the Company, and (d) the existence and content of any non-public business discussions, negotiations, or agreements between the Company and any third party disclosed to me over the course of my employment.

B. *Former Employer Information*. I represent that my employment by the Company does not and will not breach any agreement with any former or concurrent employer, including any non-compete agreement or any agreement to keep in confidence information acquired by me in confidence or trust prior to my employment by the Company. I agree that I will not, during my employment with the Company, improperly use or disclose any confidential information or trade secrets of any former or concurrent employer or other person or entity to whom I have an obligation of confidentiality and that I will not bring onto the premises of the Company any unpublished document or any confidential information belonging to any such employer, person or entity to whom I have an obligation of confidentiality, unless consented to in writing by such employer, person or entity.

C. *Third Party Information*. I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes ("Third Party Information"). During the term of my employment and thereafter, I agree to hold all Third Party Information in the strictest confidence and not to disclose it to any person (other than Company personnel who need to know such information in connection with my work for the Company), firm or corporation or to use it except in connection with my work for the Company, or except as may be expressly authorized by an officer of the Company in writing.

D. *Exception.* The obligations regarding the Confidential Information hereunder shall not apply to Confidential Information which becomes publicly known through no fault of my own or another person's breach of a confidentiality obligation. The obligation not to disclose Confidential Information shall not preclude compliance with a lawful request of any regulatory authority responsible for the regulation of any party or pursuant to the subpoena power of any court, tribunal, regulatory authority, or other body so empowered, provided that the parties shall avail themselves of any rules and regulations of that regulatory authority or other body in order to keep Confidential Information non-disclosed. I agree that if disclosure of Confidential Information is compelled by law, I will give the Company as much written notice as possible under the circumstances, will refrain from use or disclosure for as long as the law allows, and will cooperate with the Company to protect such information, including taking every reasonable step to protect against unnecessary disclosure. Notice should be given to the Company's General Counsel.

E. *Time Limitation.* If an additional time limitation on the foregoing restrictions is required in order for them to be enforceable then the restriction against disclosure of Confidential Information shall be limited to a period of two (2) years following the termination

of my employment (whatever the cause) for any information that does not qualify as a trade secret. Trade secret information will remain protected at all times and nothing herein shall be construed to reduce or diminish the applicability of trade secret protections, statutory or common law, that apply to the Company's trade secrets independent from this Agreement.

3. *Inventions*.

A. *Inventions Retained and Licensed*. I have attached hereto, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company (collectively referred to as "Prior Inventions"), which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or service a Prior Invention owned by me or in which I have an interest, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or service, and to practice any method related thereto.

B. *Assignment of Inventions*. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company: (1) using the time, facilities, proprietary information, or other resources of the Company; or (2) relating to the actual or reasonably anticipated business of the Company (collectively referred to as "Inventions"). I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Invention is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such Invention.

C. *Inventions Assigned to the United States*. I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

D. *Maintenance of Records*. I agree to keep and maintain adequate and current written records of all Inventions during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

E. *Patent and Copyright Registrations.* I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. All such actions requested by the Company shall be at the Company's sole expense. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

F. *Notice.* Employees in California, Delaware, Illinois, Kansas, Minnesota, North Carolina, Utah, and Washington are advised to refer to Exhibit B for additional information about the scope of the invention assignment provisions in this Section 3.

4. *Conflicting Employment.*

I agree that, during the term of my employment with the Company, I will not engage in any employment, occupation, consulting relationship, or any other activities that conflict with my obligations to and/or my duty of loyalty to the Company.

5. *Returning Company Documents*. I agree that, at the time of the termination of my employment, or earlier upon request of the Company, I will deliver to the Company (and will not keep in my possession, copy, recreate or deliver to anyone else) any and all Company property (including any and all devices and equipment), as well as any and all Company records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, other documents in any media or property, or reproductions of any aforementioned items developed or received by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to paragraph 3.D **(collectively "Company Records")**. After providing all such Company Records to the Company I will delete all digital copies from any computers, PDA's, or other digital storage devices that do not belong to the Company and that I use or control. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as Exhibit C. However, I understand and acknowledge that the Company's failure to require me to execute a Termination Certificate does not relieve me of my obligations and duties under this Agreement, which shall survive whether or not the Termination Certificate is executed and returned to the Company.

6. *Protective Covenants*. I agree that the covenants below are (a) reasonable and necessary for the protection of the legitimate business interests of the Company, (b) not against the public interest and (c) do not place an unreasonable burden upon my ability to earn a living.

6.1. ***Definitions***.

A. "*Affiliate*" means the Company's successors in interest, affiliates, subsidiaries, parents, purchasers, or assignees.

B. "*Covered Customer*" is a customer (person or entity) of the Company or an Affiliate that I had business-related contact or dealings with, or received Confidential Information about, in the Look Back Period (defined below). Covered Customers do not include a customer of the Company or an Affiliate who has fully and finally decided to cease doing business with the Company or the Affiliate due to no fault of mine or breach of this Agreement, and who have, in fact, ceased doing any business with the Company for at least 180 days immediately prior to the termination of my employment with the Company.

C. "*Conflicting Product or Service*" is a product and/or service that is the same or similar in function or purpose to a Company product and/or service, such that it would replace or compete with: a product and/or service the Company provides to its customers or franchisees and regarding which I had business-dealings or received Confidential Information during the Look Back Period; or a product or service that is under development or planning by the Company but not yet provided to customers or franchisees and regarding which I was provided Confidential Information during the Look Back Period. Conflicting Products or Services do not include a product or service of the Company if the Company is no longer in the business of providing such product or service to its customers or franchisees at the relevant time of enforcement.

D. "*Competing Activities*" are any activities or services undertaken on behalf of a Competing Business that are the same or similar in function or purpose to those I performed for the Company in the Look Back Period, or that are otherwise probable or likely to result in the use or disclosure of Confidential Information. Competing Activities are understood to exclude: activities on behalf of an independently operated subsidiary, division, or unit of a diversified corporation or similar business that has common ownership with a Competing Business so long as the independently operated business unit does not involve the ownership and operations of, or sale franchise licenses for, professional smartphone and/or other electronics repair stores, the sale of parts to such repair stores or a Conflicting Product or Service; and, a passive and non-controlling ownership interest in a Competing Business through ownership of less than 2% of the stock in a publicly traded company.

E. "*Competing Business*" is any person or entity engaged in the business of providing a Conflicting Product or Service, including but not limited to, Assurant, Assurant Solutions (The Signal), eSecuritel/Brightstar, ProtectCell, Global Warranty Group, SquareTrade, CPR Cell Phone Repair and Service Net or the business of owning and operating, or selling franchise licenses for, professional smartphone and/or other electronics repair stores and/or the sale of repair parts so such stores.

F. "*Restricted Area*" means the Company's area of legitimate competitive

concern based on my responsibilities to the Company, knowledge of Confidential Information, and goodwill with customers, clients, business partners, dealers and agents as it exists in view of all relevant facts and circumstances. Therefore, if my responsibilities are sales or marketing, then the Restricted Area is the territory over which I had sales or marketing responsibilities during the Look Back Period. If my responsibilities to the Company are nationwide in scope (such as, by way of example, my executive, corporate, or administrative responsibilities), then the Geographic Area is the United States. Otherwise, the Geographic Area is understood to be the area within a 50 mile radius of the location(s) to which I report or am assigned during the Look Back Period.

G. "*Look Back Period*" is the two (2) year period preceding the end of my employment with the Company. References to the end of my employment in this Agreement refer to the end, whether by resignation or termination, and without regard for the reason employment ended.

6.2. ***Restriction on Interfering with Employee Relationships***. I agree that for a period of twelve (12) months following the end of my employment with the Company, I will not interfere with the Company's business relationship with a Company employee, by: (a) soliciting or communicating with such an employee to induce or encourage him or her to leave the Company's employ (regardless of who first initiates the communication); (b) helping another person or entity evaluate a Company employee as an employment candidate; or (c) otherwise helping any person or entity hire an employee away from the Company; unless a duly authorized Company officer gives me written authorization to do so. Where required by state law, the foregoing restriction will only apply to employees with whom I had material business-related contact or about which I received Confidential Information, within the Look Back Period. This provision is limited to Company employees who were employed by the Company as of my termination date, at any time during the ninety-day (90) period immediately following my termination date, or within ninety (90) days preceding the termination of my employment.

6.3. ***Restriction on Interfering with Customer Relationships***. I agree that for a period of twelve (12) months following the end of my employment with the Company, I will not interfere with the Company's business relationships with a Covered Customer, by soliciting or communicating (regardless of who initiates the communication) with a Covered Customer to induce or encourage the Covered Customer to: (a) stop or reduce doing business with the Company or an Affiliate, or (b) to buy a Conflicting Product or Service; unless a duly authorized Company officer gives me written authorization to do so. The parties agree this restriction is inherently reasonable because it is limited to the places or locations where the Covered Customer is doing business at the time.

6.4. ***Restriction Against Unfair Competition***. I agree that for a period of twelve (12) months following the end of my employment with the Company, I will not participate in, supervise, or manage (as an employee, consultant, contractor, officer, owner, director, or otherwise) Competing Activities in the Restricted Area.

6.5. ***Survival of Restrictions***. I will advise any future employer of the restrictions in this Agreement before accepting new employment. The post-employment restrictions provided for in this Agreement shall survive the termination of my employment with the Company regardless of the cause of the termination. If I fail to comply with a time-limited

restriction in this Agreement, the time period applicable to the restriction shall be extended by one day for each day I am found to have violated the restriction up to a maximum period of twelve (12) calendar months.

6.6. ***State Specific Modifications***. State-specific modifications of this Agreement, if any, are contained in Exhibit D.

7. *Code of Conduct*. I agree to abide by the Company's Code of Conduct, as it may be amended from time to time.

8. *Representations*. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I will not enter into, any oral or written agreement in conflict herewith.

9. *Arbitration and Equitable Relief.*

A. *Arbitration*. In consideration of my employment with the Company, its promise to arbitrate all employment-related disputes and my receipt of the compensation, pay raises and other benefits paid to me by the Company, at present and in the future, the Company and I agree that any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder or non-ERISA benefit plan of the Company or the plan's sponsors, fiduciaries, affiliates or agents in their capacity as such or otherwise) arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company, including any breach of this Agreement but excluding any issues related to the enforceability of this Agreement, shall be subject to binding arbitration under the arbitration rules set forth in the Employment Arbitration Rules of the American Arbitration Association ("AAA") (the "Rules"). The Rules are available on line at the AAA's web site: www.adr.org. The Rules also may be obtained upon request to the *NEW*Asurion Legal Department, 648 Grassmere Park, Suite 300, Nashville, Tennessee 37211.

Arbitration under this Agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.). Disputes which the Company and I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include, but are not limited to, all statutory claims arising out of the employment relationship or its termination, including workplace discrimination claims, alleged violations of Title VII of the Civil Rights Act of 1964, sections 1981 through 1988 of Title 42 of the United States Code and all amendments thereto, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefits Protection Act of 1990 ("OWBPA"), the Fair Labor Standards Act ("FLSA"), the Occupational Safety and Health Act ("OSHA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and any and all claims under federal, state, and local laws and common law, but excluding worker's compensation claims, state disability insurance claims and claims for unemployment benefits. I further understand that this agreement to arbitrate also applies to any disputes that the Company may have with me, including without limitation, claims for misappropriation of trade secrets and unfair competition.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission, the U.S. Department of Labor, and the National Labor Relations Board. Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this agreement.

B. *Procedure*. The arbitration will be administered by the AAA, and the neutral arbitrator will be selected in a manner consistent with the Rules. The arbitrator shall have the power to decide any motions brought by any party to the arbitration, including motions for discovery, motions for summary judgment and/or adjudication and motions to dismiss and demurrers, prior to any arbitration hearing. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Company will pay for any administrative or hearing fees charged by the arbitrator or AAA. The arbitrator shall administer and conduct any arbitration in a manner consistent with the Rules. The decision of the arbitrator shall be in writing and state the essential findings of fact and conclusions of law.

C. *Remedy*. Except as provided by the Rules and this Agreement, arbitration shall be the sole, exclusive and final remedy for any dispute covered by this Agreement between me and the Company. Accordingly, except as provided for by the Rules and this Agreement, neither I nor the Company will be permitted to pursue court action regarding claims that are subject to arbitration.

D. ***Class Action Waiver*. Both the Company and I agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, representative or private attorney general basis. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding, including without limitation pending but not certified class actions ("Class Action Waiver").** Disputes regarding the validity and enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

In any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) a civil court of competent jurisdiction finds all or part of the Class Action Waiver unenforceable, the class, collective, representative and/or private attorney general action must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

The Class Action Waiver, and any other provision of this Agreement, shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

Although employees will not be retaliated against, disciplined or threatened with discipline for exercising their rights under section 7 of the National Labor Relations Act by the filing of or participation in a class, collective, representative or private attorney general action, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of any such class, collective, representative and/or private attorney general action.

E. *Availability of Injunctive Relief*. In addition to the right under the Rules to petition the court for provisional relief, the Company and I agree that either party may also petition the court for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief. The Company and I understand that not having access to the court under such circumstances will cause irreparable injury and that money damages will not provide an adequate remedy, and therefore and both parties hereby consent to this exercise of the court's authority. The arbitrator shall have the exclusive authority to decide issues of permanent injunctive relief and monetary damages.

F. *Understanding of Agreement.* I further acknowledge and agree that I have carefully read this Agreement and that I have asked any questions needed for me to understand the terms, consequences and binding effect of this Agreement and fully understand it, including that the Company and I are **WAIVING THE RIGHT TO A JURY TRIAL**. Finally, I agree that I have been provided an opportunity to seek the advice of an attorney of my choice before signing this Agreement.

*10. General Provisions.*

A. *Governing Law; Consent to Personal Jurisdiction*. This Agreement will be governed by the laws of the state in which I last resided while employed by the Company. I hereby expressly consent to the personal jurisdiction of the state and federal courts located in Davidson County, Tennessee for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

B. *Defense of Claims*. I agree that for a period of two (2) years after termination of my employment, upon request from the Company, I will cooperate with the Company in the defense of any claims or actions that may be made by or against the Company that affect my prior areas of responsibility, except if my reasonable interests are adverse to the Company in such claim or action. The Company agrees to promptly reimburse me for all of my reasonable travel and other direct expenses incurred, or to be reasonably incurred, to comply with my obligations under this Section 10(B).

C. *Entire Agreement*. This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matters herein and supersedes all prior discussions or representations between us on these subject matters including,

but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Chief Executive Officer of the Company (or his/her designee) and me. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

D. *Severability*. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect. To the extent that an arbitrator or court of competent jurisdiction determines that any provision of Section 6 is overly broad, overly long or overly large as to geographic or temporal scope or scope of activities sought to be restrained, the Company and I authorize said arbitrator or court to modify the provision to the extent necessary to render it enforceable.

E. *Successors and Assigns*. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns without the need for further action or agreement by me. Should I become employed by an Affiliate of the Company, the Affiliate shall step into the Company's shoes and all references to the Company in this Agreement shall apply to such Affiliate.

F. *Non-Assignability.* I shall not assign my rights and obligations under this Agreement, in whole or in part, whether by operation of law or otherwise, without the prior written consent of the Company, and any such assignment contrary to the terms hereof shall be null and void and of no force or effect.

G. *Section Headings.* Section and subsection headings contained in this Agreement are inserted for convenience of reference only, shall not be deemed to be a part of this Agreement for any purpose, and shall not in any way define or affect the meaning, construction or scope of any of the provisions hereof.

H. *No Waiver.* No delay or failure at any time on the part of the Company in exercising any right, power or privilege under this Agreement, or in enforcing any provisions of this Agreement, shall impair such right, power or privilege or be construed as a waiver of such provision, or be construed as a waiver or default. Further, except pursuant to a written agreement of the parties hereunder, no action taken pursuant to this Agreement will be deemed to constitute a waiver of compliance with any representation, warranty, covenant or agreement contained in this Agreement, and will not operate or be construed as a waiver or continuing waiver of any subsequent breach thereof, whether of a similar or dissimilar nature.

Date: 09/18/2021

Paige A McIver
Paige A McIver (Sep 18, 2021 00:09 CDT)
Signature

Paige A McIver
Name of Employee (typed or printed)

## Exhibit A

### LIST OF PRIOR INVENTIONS
### AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| in home coach | 09/18/2021 | n/a |

☑ No inventions or improvements

☐ Additional Sheets Attached

Signature of Employee: Paige A McIver
Paige A McIver (Sep 18, 2021 00:09 CDT)

Print Name of Employee: Paige A McIver

Date: 09/18/2021

## Exhibit B

### NOTICE REGARDING INVENTION ASSIGNMENT

1. For an employee residing in **Delaware, Illinois, Kansas, or North Carolina**, you are hereby advised:

   **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on your own time, unless (a) the invention relates (i) to the business of the Company or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by you for the Company. Delaware Code Title 19 Section 805; Illinois 765ILCS1060/1-3, "Employees Patent Act"; Kansas Statutes Section 44-130; North Carolina General Statutes Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

2. For an employee residing in **Minnesota**, you are hereby advised:

   **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on your own time, and (a) which does not relate (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by you for the Company. Minnesota Statutes 13A Section 181.78.

3. For an employee residing in **Utah**, you are hereby advised:

   **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention which was created entirely on your own time, and which is not (a) conceived, developed, reduced to practice, or created by you (i) within the scope of your employment with the Company, (ii) on the Company's time, or (iii) with the aid, assistance, or use of any of the Company's property, equipment, facilities, supplies, resources, or patents, trade secrets, know- how, technology, confidential information, ideas, copy rights, trademarks and service marks and any and all rights, applications and registrations relating to them, (b) the results of any work, services, or duties performed by you for the Company, (c) related to the industry or trade of the Company, or (d) related to the current or demonstrably anticipated business, research, or development of the Company. Utah Code Sections 34-39-1 through 34-39-3, "Employee Inventions Act."

4. For an employee residing in **Washington**, you are hereby advised:

   **Notice.** No provision in this Agreement requires you to assign any of your rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on your own time, unless (a) the invention relates (i) directly to the business of the Company, or (ii) to the Company's actual or

demonstrably anticipated research or development, or (b) the invention results from any work performed by you for the Company. Washington Rev. Code, Title 49 RCW: Labor Regulations Chapter 49.44.140.

5. For an employee residing in **California**, you are hereby advised:

**Notice.** No provision in this Agreement requires you to assign any of your rights to an invention if that invention qualifies for exclusion under California Labor Code §2870 which states: (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer, (b) to the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable. Cal. Lab. Code §2870.

**<u>Exhibit D</u>**

**STATE-SPECIFIC MODIFICATIONS TO PROTECTIVE COVENANTS CONTAINED IN SECTION 6**

**Exhibit D - Arizona**

For an Arizona resident, for so long as you reside in Arizona and are subject to the laws of Arizona:

The restrictions in Section 6.3 will only apply within the Restricted Area.

⚠ Click here to indicate this Exhibit is NOT APPLICABLE (N/A) to you and then sign below. ☐

EMPLOYEE'S SIGNATURE:

Paige A McIver
Paige A McIver (Sep 18, 2021 00:09 CDT)

Name: Paige A McIver

**Exhibit D - California**

For a California resident, for so long as you reside in California and are subject to the laws of California:

1. The provisions of Section 6.2 shall be rewritten: I agree that for a period of twelve (12) months following the end of my employment with the Company, I will not solicit an employee of the Company to leave the Company's employment.

2. The provisions of Section 6.3 shall be rewritten as follows:

**Restriction on Interfering with Covered Customer Relationships.** During employment with the Company, and for eighteen (18) complete calendar months thereafter, I will not, directly or indirectly, use the Company's trade secrets to interfere with the relationship between the Company and a Covered Customer. It shall be considered a prohibited act of interference for me to use the Company's trade secrets to participate in soliciting, encouraging, or inducing a Covered Customer (a) to do business with a Competing Business, or (b) to stop or reduce doing business with the Company, except where such conduct is expressly authorized in writing by an authorized officer of the Company. The parties stipulate that this restriction is inherently limited to a reasonable geography or geographic substitute because it is limited to the place or location where the Covered Customer is located at the time.

3. The provisions of Section 6.4 shall not apply.

4. No provision or requirement of the Agreement will be construed or interpreted in a manner contrary to the public policy of the State of California.

Click here to indicate this Exhibit is NOT APPLICABLE (N/A) to you and then sign below. ☐

EMPLOYEE'S SIGNATURE:

Paige A McIver

Paige A McIver (Sep 18, 2021 00:09 CDT)

Name: Paige A McIver

## Exhibit D - Louisiana

For a Louisiana resident, for so long as you reside in Louisiana and are subject to the laws of Louisiana, the Loyalty and Confidentiality Agreement is modified as follows:

> The enforcement of the restrictions in Sections 6.3 and 6.4 will be limited within the state of Louisiana to the Parishes in which I assisted the Company in providing its products and services, as are indicated by circling below; provided, however, that nothing in Agreement may be construed to prohibit the enforcement of Sections 6.3 and 6.4 in accordance with their terms in states outside of Louisiana.

| | | | |
|---|---|---|---|
| Acadia | Allen | Ascension | Assumption |
| Avoyelles | Beauregard | Bienville | Bossier |
| Caddo | Calcasieu | Caldwell | Cameron |
| Catahoula | Claiborne | Concordia | De Soto |
| East Baton Rouge | East Carroll | East Feliciana | Evangeline |
| Franklin | Grant | Iberia | Iberville |
| Jackson | Jefferson | Jefferson Davis | Lafayette |
| Lafourche | La Salle | Lincoln | Livingston |
| Madison | Morehouse | Natchitoches | Orleans |
| Ouachita | Plaquemines | Pointe Coupee | Rapides |
| Red River | Richland | Sabine | St. Bernard |
| St. Charles | St. Helena | St. James | |
| St. John the Baptist | St. Landry St. | St. Martin | St. Mary |
| Tammany | Tangipahoa | Tensas | Terrebonne |
| Union | Vermilion | Vernon | Washington |
| Webster | West Baton Rouge | West Carroll | West Feliciana |
| Winn | | | |

Click here to indicate this Exhibit is NOT APPLICABLE (N/A) to you and then sign below. ☐

EMPLOYEE'S SIGNATURE:

Paige A McIver
Paige A McIver (Sep 18, 2021 00:09 CDT)

Name: Paige A McIver

## Exhibit D – North Dakota

For a North Dakota resident, for so long as you reside in North Dakota and are subject to the laws of North Dakota:

1. The provisions of Section 6.3 shall be rewritten as follows:

**Restriction on Interfering with Covered Customer Relationships.** During employment with the Company, and for eighteen (18) complete calendar months thereafter, I will not, directly or indirectly, use the Company's trade secrets to interfere with the relationship between the Company and a Customer. It shall be considered a prohibited act of interference for me to use the Company's trade secrets to participate in soliciting, encouraging, or inducing a Covered Customer (a) to do business with a Competing Business, or (b) to stop or reduce doing business with the Company, except where such conduct is expressly authorized in writing by an authorized officer of the Company. The parties stipulate that this restriction is inherently limited to a reasonable geography or geographic substitute because it is limited to the place or location where the Covered Customer is located at the time.

2. The provisions of Section 6.4 shall not apply.

3. No provision or requirement of the Agreement will be construed or interpreted in a manner contrary to the public policy of the State of North Dakota.

⚠ Click here to indicate this Exhibit is NOT APPLICABLE (N/A) to you and then sign below. ☐

EMPLOYEE'S SIGNATURE:

Paige A McIver
Paige A McIver (Sep 18, 2021 00:09 CDT)

Name: Paige A McIver

## Exhibit D - Wisconsin

For a Wisconsin resident, for so long as you reside in Wisconsin and are subject to the laws of Wisconsin, the Loyalty and Confidentiality Agreement is modified as follows:

(a) the tolling language in Section 6.5 shall not apply.

⚠ Click here to indicate this Exhibit is NOT APPLICABLE (N/A) to you and then sign below. ☐

EMPLOYEE'S SIGNATURE:

Paige A McIver
Paige A McIver (Sep 18, 2021 00:09 CDT)

Name: Paige A McIver