IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **PAIGE McIVER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 3:26-cv-01188** |
| | ) | |
| **v.** | ) | **Chief Judge William L. Campbell, Jr.** |
| | ) | |
| **ASURION INSURANCE SERVICES, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# PLAINTIFF'S SUPPLEMENTAL BRIEF ON THE STANDARD FOR ALLEGING A SEXUAL HARASSMENT DISPUTE UNDER 9 U.S.C. §§ 401(4) AND 402(a)

Plaintiff Paige McIver submits this supplemental brief as directed by the Court's Order of October 27, 2026. (Doc. 13 at 3). This brief addresses the two questions in the Order. Ms. McIver does not waive the other arguments in her response. (Doc. 11).

## INTRODUCTION

The Court asked two questions. First, in a Title VII retaliation case for reporting perceived sexual harassment, which standard identified in *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 375-76 (6th Cir. 2026), governs what it means to "allege" a sexual harassment dispute? Second, does the Complaint meet that standard? (Doc. 13 at 3).

The answer to the first question is the *Diaz-Roa* standard. The statute defines the dispute by what is "alleged." It gives the election to the person "alleging" the conduct. The reasons courts have given for importing Rule 12(b)(6) plausibility do not survive *Bruce*, and they do not fit a case where no harassment claim is pleaded and no Rule 12(b)(6) motion is pending. In a retaliation

case, *Diaz-Roa*'s inquiry is also consistent with an element Title VII already requires: a reasonable, good-faith belief the opposed conduct was unlawful.

The answer to the second question is yes. Ms. McIver alleges a manager showed nude videos of a female customer to employees inside a store, and during an earlier visit described how he took a woman's virginity. The Commission's guidelines call unwelcome conduct of a sexual nature sexual harassment when it has the purpose or effect of creating an offensive working environment. The Complaint meets *Diaz-Roa*. It meets *Yost* as well, because Count VII plausibly pleads that Ms. McIver reasonably believed the conduct she reported was unlawful.

## ARGUMENT

### I. The *Diaz-Roa* standard governs.

As the party invoking the Act, Ms. McIver must show it applies, and she carries that burden through the Complaint. (Doc. 11 at 14). The Court takes the Complaint's allegations as true. *See Bruce*, 168 F.4th at 375. The question the Court has asked is what those allegations must show.

#### A. *Bruce* left the question open, and the Second Circuit has since done the same.

The election belongs to "the person alleging conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). A sexual harassment dispute is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The Act "does not itself define what it means for a plaintiff to 'allege' such a dispute." *Bruce*, 168 F.4th at 375.

*Bruce* identified the *Yost* plausibility standard as "the prevailing view of federal district courts." *Id.* It identified the *Diaz-Roa* standard as the alternative. That standard requires "that the conduct must be actually alleged and with sufficient specificity that the court is able to determine the law that is applicable and that there is a real and nonfrivolous reason to believe that the conduct

violates that law against sexual harassment." *Id.* at 376 (quoting *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 542 (S.D.N.Y. 2024)). The court then left "for another day the question of whether the *Yost* standard (federal pleading standard), the *Diaz-Roa* standard (*Bell v. Hood*'s jurisdictional standard), or some other standard represents the correct interpretation of the EFAA." *Id.* It did so because the plaintiff prevailed under the higher bar and had forfeited any argument for a lower one. *Id.*

On September 30, 2026, the Second Circuit affirmed *Diaz-Roa* on appeal. *Diaz-Roa v. Hermes L., P.C.*, No. 24-3223-cv, 2026 WL 2931801, at *11 (2d Cir. Sept. 30, 2026). It too declined to choose between the *Bell v. Hood* standard and the *Twombly*/*Iqbal* standard, because the defendants had not challenged the district court's choice and the claims met the higher standard anyway. *Id.* at *3 n.3 (citing *Bruce*, 168 F.4th at 376). Neither circuit has chosen. The question is open, and the text answers it.

**B. The text keys both provisions to what is alleged.**

Congress used the word "alleged" in the definition and "alleging" in the operative provision. 9 U.S.C. §§ 401(4), 402(a). It could have defined a sexual harassment dispute as a dispute relating to conduct "that constitutes sexual harassment." It did not. It defined the dispute by conduct "alleged to constitute" sexual harassment.

Asurion reads the definition the other way. It stresses the word "constitute" and argues the conduct "must be sexual harassment as governing law defines it." (Doc. 12 at 3). *Memmer* took the same approach, reading "constitute" to mean "establish by law." *Memmer v. United Wholesale Mortg.*, No. 23-cv-10921, 2026 WL 561393, at *5 (E.D. Mich. Feb. 27, 2026). That reading skips the word in front of "constitute." The participle "alleged" tells the court what to examine: the allegation, not a merits finding.

Federal law also tells the Court what "constitute sexual harassment" means. The Commission's guidelines use the same verb. "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of . . . creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a). That definition describes the kind of conduct the Act reaches. Whether conduct of that kind is "sufficiently severe or pervasive" to be actionable is the merits measure. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). Even *Memmer* framed the question as whether the plaintiff "alleged a plausible sexual harassment claim or at least 'sexual harassment' under Title VII or ELCRA." 2026 WL 561393, at *9.

The *Diaz-Roa* standard gives the word "alleged" its work. It asks whether the conduct is actually alleged, whether the applicable law can be identified, and whether there is a real and nonfrivolous reason to believe the conduct violates it. *Bruce*, 168 F.4th at 376. Sufficiency on the merits is "reserved for proper merits adjudication." *Diaz-Roa*, 757 F. Supp. 3d at 533.

### C. The reasons given for importing plausibility do not survive *Bruce* and do not fit this case.

Most district courts to address the question, including courts in this Circuit, have followed *Yost*. *Bruce*, 168 F.4th at 375; *Memmer*, 2026 WL 561393, at *5. *Yost* held "the term 'alleged' as used in § 401(4) is best read to implicitly incorporate the plausibility standard." *Bruce*, 168 F.4th at 376 (quoting *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023)). The courts following *Yost* rely on a set of shared reasons. *Memmer* summarized them. 2026 WL 561393, at *6. The main reasons do not hold here.

1. **Congress's awareness of *Twombly* and *Iqbal* does not make "alleged" a plausibility test.**

Asurion argues "allege" is a pleading term Congress used against the settled *Twombly* and *Iqbal* background. (Doc. 14 at 4). But § 402(a) uses "alleging" to identify who may make the election, and § 401(4) uses "alleged" to define a dispute, not a claim for relief. Rule 12(b)(6) tests whether a claim entitles the pleader to relief. The Act asks a different question: whether the case relates to conduct alleged to be sexual harassment. Congress wrote "alleged," not "plausibly alleged."

2. **The pro-arbitration policy does not govern the EFAA.**

*Memmer* closed its discussion of the standard with policy. It noted the FAA's "strong public policy favoring arbitration," *Id.* (quoting *Memmer v. United Wholesale Mortg.*, 135 F.4th 398, 406 (6th Cir. 2025)), and concluded "failing to imply a plausibility requirement in the EFAA would run contrary to the FAA's overall statutory scheme," *Id.* (quoting *Smith v. Boehringer Ingelheim Pharms., LLC*, No. 3:24-cv-01266, 2025 WL 2403042, at *6 (D. Conn. Aug. 19, 2025)). The Sixth Circuit's observation in *Memmer* described what the court "would historically have concluded" before the Act. *Memmer*, 2026 WL 561393, at *3 (quoting *Memmer*, 135 F.4th at 404-06). It did not address how to read "alleged." *Bruce* answered the interpretive question. The presumption favoring arbitration "does not govern statutory interpretation." *Bruce*, 168 F.4th at 384. It is a canon for construing arbitration contracts, not the statute Congress wrote to displace them. *Id.* *Memmer* was decided two days after *Bruce* and does not cite the Sixth Circuit's decision.

3. **The "durable dismissal" rationale presupposes a pleaded harassment claim and a pending Rule 12(b)(6) motion.**

*Yost* reasoned that plausibility vindicates the Act's purpose by letting a claimant litigate her harassment claims in court "through the point of their durable dismissal." *Memmer*, 2026 WL

561393, at *6 (quoting *Yost*, 657 F. Supp. 3d at 586). That reasoning assumes a harassment claim in the complaint and a motion to dismiss it. *Bruce* had both. The court explained the Rule 12(b)(6) standard was "central to this appeal" because a plaintiff must "allege" the dispute to invoke the Act. *Bruce*, 168 F.4th at 375. The dispute there was the plaintiff's own pleaded hostile work environment claim, and the court tested it. *Id.* at 376-82.

This case has neither. Ms. McIver pleads no hostile work environment claim, and no Rule 12(b)(6) motion is before the Court. Applying *Yost* to the reported conduct would require the Court to test a hostile work environment claim no one has filed, for the sole purpose of choosing a forum. A threshold inquiry fits that task better, and *Bruce* identified the *Diaz-Roa* standard with "*Bell v. Hood*'s jurisdictional standard." *Bruce*, 168 F.4th at 376. Asurion says *Bell v. Hood* concerns a court's power, not the choice of forum. (Doc. 14 at 5). That is the point of the analogy. *Bell v. Hood* screens out frivolous claims at the threshold without deciding the merits. The Act's gateway does the same work: it decides where the merits are heard, not how they come out.

Asurion now asks, in the alternative, for leave to test Count VII under Rule 12(b)(6) before the Act applies. (Doc. 14 at 12-13). The Court should decline. A Rule 12(b)(6) motion against Count VII would test the elements of retaliation, not whether the Complaint alleges a sexual harassment dispute, and the Act asks only the second question. Asurion chose to move to compel arbitration. *Bruce* decided the motions the parties filed.

### D. In a retaliation case, the reasonable-belief element of the claim is consistent with the *Diaz-Roa* inquiry.

A retaliation claim arising from a report of sexual harassment is itself a sexual harassment dispute. *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 92 (2d Cir. 2024) ("[R]etaliation resulting from a report of sexual harassment is 'relat[ed] to conduct that is alleged to constitute sexual harassment.'" (quoting 9 U.S.C. § 401(4))); *accord Diaz-Roa*, 2026 WL 2931801, at *4 n.5. In

those cases, as in the others applying the Act to retaliation, the reporting employee was also a target. In two of them, the harassment claims fell outside the Act on accrual grounds, and the retaliation claim alone carried the entire case into court. *Clay v. FGO Logistics, Inc.*, 751 F. Supp. 3d 3, 17, 20 (D. Conn. 2024); *Molchanoff v. SOLV Energy, LLC*, No. 23-cv-653-LL-DEB, 2024 WL 899384, at *4-5 (S.D. Cal. Mar. 1, 2024). In such a case, the "conduct . . . alleged to constitute sexual harassment" is the conduct the employee reported. The dispute is over what the employer did to her for reporting it.

Title VII protects that report without requiring proof the reported conduct was actionable. An employee who opposes harassment "need not prove that the environment he complained of was actually hostile in order for the employee to receive protection from retaliation under Title VII." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015). The opposition must rest on "a reasonable and good faith belief that the opposed practices were unlawful." *Id.* (internal quotation marks omitted). Objective reasonableness is decided as a matter of law "only when no reasonable person could have believed that the facts known to the employee amounted to a violation." *Id.* (internal quotation marks omitted). As the Sixth Circuit recently put it, "the operative question is not whether [the complained of] conduct was actually unlawful, but whether Plaintiff held an objectively reasonable and good faith belief to that effect." *Graf v. Morristown-Hamblen Hosp. Ass'n*, 155 F.4th 578, 589 (6th Cir. 2025) (quoting *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 512 (6th Cir. 2016)). Opposition on behalf of others is protected. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000) (holding an official's advocacy on behalf of women and minorities was protected opposition, consistent with "the broad approach used when considering a claim for retaliation under this clause").

*Diaz-Roa*'s third requirement is the Court's own inquiry. It asks whether there is "a real and nonfrivolous reason to believe that the conduct violates that law against sexual harassment." *Bruce*, 168 F.4th at 376. That is not the same question as the reasonable-belief element, but in a retaliation case the two point the same way. When there is a real and nonfrivolous reason to believe the reported conduct is sexual harassment, an employee's belief that it was unlawful is reasonable. The reasonable-belief element corroborates the *Diaz-Roa* answer. It does not replace it.

Asurion says this reading would "sweep in every report of offensive workplace conduct." (Doc. 12 at 4). It would not. *Diaz-Roa* has limits. The conduct must be "actually alleged and with sufficient specificity." *Bruce*, 168 F.4th at 376. The governing law must be identifiable. *Id.* The reason to believe the conduct is sexual harassment must be "real" and "nonfrivolous." *Id.* A report of general rudeness, or of sex discrimination that is not harassment, would not qualify. *See Memmer*, 2026 WL 561393, at *6-7 (distinguishing sexual harassment from other sex discrimination). A report of nude videos of a female customer shown to employees at work does. Ms. McIver's report also included a racial slur. (Doc. 1, ¶¶ 46-49). She does not rely on that statement to invoke the Act. (Doc. 11 at 9). A report does not stop relating to sexual harassment because it also reported racial harassment.

Asurion's reading also produces an odd result. Under it, Title VII would protect Ms. McIver's report because her belief was reasonable, yet the EFAA would deny her its forum because a court later found the reported conduct short of an actionable hostile environment. Congress defined the dispute by what is alleged. It did not condition the forum on a showing Title VII does not require for the claim itself.

### E. Asurion's district court decisions do not resolve this question.

Asurion relies chiefly on four district court decisions. (Doc. 12 at 3-5; Doc. 14 at 5). None reaches the question presented. *Parks* applied plausibility to a pro se plaintiff's own harassment claim, without addressing *Diaz-Roa* or a retaliation theory. *Parks v. Nordson Med. of NH Inc.*, No. 1:25-cv-138, 2025 WL 2177177, at *5-6 (E.D. Tenn. July 31, 2025). In *Claybrook*, the court denied the motion to compel, because the employer conceded its motion depended on its own Rule 12(b)(6) motion. *Claybrook v. Freightliner of Ariz., LLC*, No. 3:25-cv-00633, 2026 WL 1195852, at *13-14 (M.D. Tenn. May 1, 2026).

This Court adopted the report and recommendation in *Woods*. *Woods v. Am. Homes 4 Rent*, No. 3:24-cv-01450, 2026 WL 2233820, at *1 (M.D. Tenn. Aug. 3, 2026). *Woods* was a pro se race discrimination case. *Woods v. Am. Homes 4 Rent*, No. 3:24-cv-01450, 2026 WL 2236655, at *1-2 (M.D. Tenn. May 19, 2026). The plaintiff's charge and complaint said nothing about sexual harassment. *Id.* at *3. In her response brief, she argued for the first time that her retaliation claims stemmed from a sexual harassment report. *Id.* The sexual conduct she identified was a single coworker comment that an object on her desk looked like an "adult sex object." *Id.* The magistrate judge found that comment did not plausibly allege sexual harassment. *Id.* at *3-4. No party asked the court to choose between *Yost* and *Diaz-Roa*, and the report and recommendation does not discuss the question.

The result here differs even under the standard *Woods* applied. Ms. McIver pleaded both the report and the retaliation in her Complaint. (Doc. 1, ¶¶ 42-61, 246-266). The reported conduct was not a single comment. It was a manager showing nude videos of a female customer to store employees, after an account of taking a woman's virginity. (*Id.* ¶¶ 42-45). And the parties have now briefed the standard at the Court's direction. *Woods* also does not hold, at the pages Asurion

cites or elsewhere, that "Congress tied the EFAA to conduct 'alleged to constitute' sexual harassment, not to conduct an employee merely believed to be unlawful." (Doc. 12 at 4).

*Memmer* involved the plaintiff's own hostile work environment claim, based on a broker's emails saying "she was too pretty to be an underwriter." 2026 WL 561393, at *2, *8. The court adopted plausibility, and it found the plaintiff "fails to meet even the lower bar." *Id.* at *5. That conclusion rested on a broker's emails to the plaintiff, and on the absence of facts making the employer answerable for the broker. *Id.* at *8-9. Its choice of standard also rested in part on the arbitration policy that *Bruce*, decided two days earlier, held does not govern the statute. *Id.* at *6. Nothing in *Memmer* resembles a manager showing nude videos of a female customer to a store's employees.

**II. The Complaint satisfies the *Diaz-Roa* standard.**

The conduct is actually alleged with specificity in the Complaint. In February 2025, Ms. McIver began visiting uBreakiFix locations in Lafayette, Louisiana, which operate under the Asurion brand. (Doc. 1, ¶¶ 38-39). She was the primary Asurion representative for her assigned sites. (*Id.* ¶ 33). A franchise district manager named Myles operated several of the Lafayette locations. (*Id.* ¶ 41). During one visit, she overheard Myles describe how he "broke the virginity" of a local restaurant owner, a woman. (*Id.* ¶¶ 42-43). During a later visit, she saw Myles show other employees nude videos of a female customer who worked as an exotic dancer. (*Id.* ¶ 44). He displayed the videos inside the store, in the presence of store employees. (*Id.* ¶ 45).

The applicable law is identified. The facts identify it. A manager's showing of nude videos of a female customer to employees inside a store, and his account of taking a woman's virginity, are conduct of a sexual nature in a workplace. The law that governs that conduct is Title VII and its implementing guideline. 42 U.S.C. § 2000e-2(a)(1); 29 C.F.R. § 1604.11(a). Asurion agrees

"[t]he law Plaintiff invokes is Title VII." (Doc. 14 at 11). Her report opposed conduct Title VII makes unlawful. (Doc. 1, ¶¶ 50-52, 58-59).

Asurion stresses that Myles worked for a franchisee. (Doc. 12 at 4-5). That does not make the governing law unidentifiable. uBreakiFix locations operate under the Asurion brand, some are franchise-owned, and Myles operated several in Lafayette. (Doc. 1, ¶¶ 39-41). Ms. McIver was Asurion's primary representative for her assigned sites and worked with franchise-owned stores in her territory. (*Id.* ¶¶ 33, 37). An employer "may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer . . . knows or should have known of the conduct and fails to take immediate and appropriate corrective action," and the Commission considers "the extent of the employer's control." 29 C.F.R. § 1604.11(e). Asurion knew of the conduct, and two Asurion managers met with Myles himself about Ms. McIver's report. (Doc. 1, ¶¶ 51-53, 61). Myles remained in his position. (*Id.* ¶ 66). Whether Asurion had the control to do more is a question of fact. *Diaz-Roa* asks for a real and nonfrivolous reason to believe, not proof.

*Bruce* does not hold otherwise. It declined to consider a harasser's conduct at a prior firm because the plaintiff was "proceeding against A&R on a theory of vicarious liability," and "[v]icarious liability requires an employment or agency relationship between a defendant and a malfeasor." *Bruce*, 168 F.4th at 377. That limit governed the plaintiff's own hostile work environment claim. Count VII does not charge Myles's conduct to Asurion. It charges Asurion with its own retaliation. (Doc. 1, ¶¶ 252-265; *see* Doc. 11 at 11-12). Title VII forbids that retaliation by the employer itself. 42 U.S.C. § 2000e-3(a).

There is a real and nonfrivolous reason to believe the conduct violates that law. Showing nude videos of a female customer to employees inside a store is "conduct of a sexual nature." 29

C.F.R. § 1604.11(a). Describing how he took a woman's virginity is "verbal . . . conduct of a sexual nature." *Id.* Ms. McIver was present for both, as an Asurion employee working with franchise stores in her territory. (Doc. 1, ¶¶ 27, 33, 37-38, 42, 44). Asurion says the Complaint does not allege the videos were shown to Plaintiff or to any Asurion employee. (Doc. 14 at 9). The Complaint alleges she was present and saw Myles show them to employees inside the store. (Doc. 1, ¶¶ 44-45). She treated the conduct as harassment and reported it. (*Id.* ¶¶ 49-51). Unwelcome conduct of that kind can "creat[e] an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a). That is the hostile environment form of sexual harassment, which Asurion agrees the Act reaches. (Doc. 14 at 11). Whether it was severe or pervasive enough to be actionable is the merits question *Diaz-Roa* reserves. *Diaz-Roa*, 757 F. Supp. 3d at 533.

Asurion's answer is that the woman in the video and the woman in the story were not employees, and the employees were "the audience shown the video, not its subject." (Doc. 12 at 4). That is the point. A workplace environment is made by what the people in it are exposed to. "[O]ffensive comments need not be directed at a plaintiff in order to constitute conduct violating Title VII." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 335 (6th Cir. 2008) (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999)). The Sixth Circuit considers "similar acts of harassment of which a plaintiff becomes aware during the course of his or her employment, even if the harassing acts were directed at others." *Id.* at 336. Sexual conduct aimed at a woman outside the workplace becomes workplace conduct when a manager shows it to employees inside the store.

Asurion also argues two incidents are too few. (Doc. 12 at 5). Frequency is one factor under the merits test. *Harris*, 510 U.S. at 23. "[I]solated incidents" can matter when they are "extremely serious." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (internal quotation marks omitted). In *Breeden*, the employee's job required her to review a sexually explicit statement in an

applicant's file, and she conceded reading it did not upset her. *Id.* at 269, 271. The rest was a supervisor reading the statement aloud in a meeting, and two men chuckling. *Id.* at 269. No reasonable person could have believed that single incident violated Title VII. *Id.* at 271. This case is different in kind. A manager showed nude videos of a female customer to employees at work. His account of taking a woman's virginity is context. It shows the sexual character of his conduct. The videos give a real and nonfrivolous reason to believe the conduct was sexual harassment.

**III. The Complaint also satisfies *Yost*.**

If the Court adopts *Yost*, it asks whether the Complaint plausibly alleges the dispute. In *Bruce*, the dispute was the plaintiff's own hostile work environment claim, so the court asked whether the complaint allowed "the reasonable inference" that Bruce "was subjected to a hostile work environment." *Bruce*, 168 F.4th at 376-77 (internal quotation marks omitted) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)). Here the dispute is Count VII. *Olivieri*, 112 F.4th at 92. A Title VII plaintiff need not plead a prima facie case. *Keys*, 684 F.3d at 609.

**A. Count VII plausibly pleads protected opposition.**

Asurion agrees that if the relevant allegation is Ms. McIver's belief, "the question becomes whether the Complaint plausibly alleges that her belief was objectively reasonable." (Doc. 14 at 7). It does. A belief is unreasonable as a matter of law "only when no reasonable person could have believed that the facts known to the employee amounted to a violation." *Yazdian*, 793 F.3d at 646 (internal quotation marks omitted). The Complaint alleges a manager showed nude videos of a female customers to employees inside a store while Asurion's representative was present, after describing how he took a woman's virginity. (Doc. 1, ¶¶ 42-45). It alleges Ms. McIver understood the conduct to be sexual harassment, reported it to her supervisor, and escalated it to Asurion's Legal and Human Resources departments. (*Id.* ¶¶ 49-51, 58-59). A reasonable person who saw

that conduct could believe it was sexual harassment. *Breeden* does not hold otherwise, for the reasons given in Part II. Count VII also pleads Asurion's knowledge of the report, the changes in her work that followed, her suspension, and her termination. (*Id.* ¶¶ 61, 67-76, 113, 163, 255).

**B. In the alternative, the reported conduct is plausibly sexual harassment.**

If the Court instead tests the reported conduct as a hostile work environment, the environment is the store's workplace. Myles showed the videos to the employees working there, and Ms. McIver was present as Asurion's representative. (*Id.* ¶¶ 33, 44-45). Harassment must be "sufficiently severe or pervasive." *Harris*, 510 U.S. at 21 (internal quotation marks omitted). Courts ask whether conduct is "physically threatening or humiliating, or a mere offensive utterance." *Id.* at 23. Showing nude videos of a female customer to employees is not an offhand remark. It is a deliberate act of a sexual nature by a manager, in the workplace, in front of the people who work there. Unwelcomeness can be inferred from the same facts, and Ms. McIver treated the conduct as harassment and reported it through two channels. (Doc. 1, ¶¶ 49-51, 58-59). A court reading a complaint draws on its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Common sense says a manager who shows nude videos of a female customer to employees at work has created an offensive working environment. Asurion's responsibility for that environment turns on its knowledge and control under § 1604.11(e), addressed in Part II.

**IV. In the alternative, Ms. McIver requests the opportunity to seek leave to amend.**

If the Court concludes the Complaint does not meet the governing standard, Ms. McIver asks the Court to say so before ruling on the Motion, and to allow her fourteen days to move for leave to amend under Federal Rule of Civil Procedure 15(a)(2), with a proposed amended

complaint. Rule 15(a)(2) directs courts to "freely give leave when justice so requires." Asurion has not answered, and no scheduling order has been entered.

## CONCLUSION

The *Diaz-Roa* standard governs. It asks whether the reported conduct is actually alleged, whether the governing law is identifiable, and whether there is a real and nonfrivolous reason to believe the conduct was sexual harassment. The Complaint meets that standard. It meets *Yost* as well, because Count VII plausibly pleads a reasonable belief that the reported conduct was sexual harassment. The EFAA therefore renders the Agreement unenforceable as to this entire case under *Bruce*, and Ms. McIver respectfully requests that the Court deny Defendant's Motion in its entirety.

Respectfully submitted,

**THE EMPLOYMENT & COMMERCE LAW GROUP**

*/s/ G. BRANDON HALL*________________________
G. BRANDON HALL, BPR No. 034027
1625 Broadway, Suite 601
Nashville, Tennessee 37203
(615) 850-0632
bhall@eclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system this 2nd day of November 2026 to the following:

James A. Crumlin, Jr. (BPR No. 019760)
Brianna Griffin (BPR No. 041449)
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
jcrumlin@spencerfane.com
bgriffin@spencerfane.com

*/s/ G. Brandon Hall*
G. Brandon Hall