EXHIBIT
Ex. 1
exhibitsticker.com

2026 WL 3403297
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Paige HOLLAND-THIELEN, an individual; Yaman Abdulhak, an individual; Scott Beck, an individual; Rebekah Clark; Deborah Lawrence, an individual; Claire Mallon, an individual; Andre Nadeau, an individual; Tom Moline, an individual, Plaintiffs - Appellees,

v.

SPACEX, Defendant - Appellant,

and

Elon Musk, Defendant.

No. 25-4811
|
Argued and Submitted June 25, 2026 Pasadena, California
|
Filed November 10, 2026

**Synopsis**

**Background:** Former employees brought action against employer in state court asserting claims under California law for hostile work environment sexual harassment, sexual harassment, failure to prevent discrimination, gender discrimination, and retaliation for voicing concerns about sexual harassment. After removal, the United States District Court for the Central District of California, John A. Kronstadt, J., denied employer's motion to compel arbitration, 2024 WL 4652812, and its motion for reconsideration, 2025 WL 2190619. Employer appealed.

The Court of Appeals, Friedland, Circuit Judge, held that employees' claims within scope of Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA).

Affirmed.

Tung, Circuit Judge, dissented and filed opinion.

**Procedural Posture(s):** On Appeal; Motion to Compel Arbitration; Motion for Reconsideration.

Appeal from the United States District Court for the Central District of California, John A. Kronstadt, District Judge, Presiding, D.C. No. 2:24-cv-06972-JAK-RAO

**Attorneys and Law Firms**

Anne B. Shaver (argued), Lieff Cabraser Heimann & Bernstein LLP, San Francisco, California; Laurie M. Burgess, Burgess Law Offices PC, San Francisco, California; for Plaintiffs-Appellees.

Michael E. Kenneally (argued), Morgan Lewis & Bockius LLP, Washington, D.C.; Thomas M. Peterson, Morgan Lewis & Bockius LLP, San Francisco, California; Karen Cho and Jennifer B. Zargarof, Morgan Lewis & Bockius LLP, Los Angeles, California; for Defendant-Appellant.



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Shelby H. Leighton, Public Justice PC, Washington, D.C.; Leila Nasrolahi and Lavanya Prabhakar, Public Justice PC, Oakland, California; for Amici Curiae Public Justice, National Women's Law Center, American Association for Justice, and National Employment Lawyers Association.

Maha Ibrahim, Catherine Bendor, and Lucy Cheskin, Equal Rights Advocates, San Francisco, California, for Amici Curiae Equal Rights Advocates, the California Employment Lawyers Association, the California Women's Law Center, and Legal Aid.
Before: Michelle T. Friedland, Danielle J. Forrest, and Eric C. Tung, Circuit Judges.

Opinion by Judge Friedland;

Dissent by Judge Tung

**OPINION**

FRIEDLAND, Circuit Judge:

***2** The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") permits individuals alleging a "sexual harassment dispute" to pursue their cases in court rather than in arbitration, notwithstanding an arbitration agreement. The statute defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). We must decide whether that definition requires making sexual harassment allegations that are sufficient to state a claim under which relief can be granted.

Plaintiffs-Appellees here are eight former employees of Defendant-Appellant Space Exploration Technologies Corporation ("SpaceX"). SpaceX fired Plaintiffs shortly after they circulated a letter to SpaceX management that voiced concerns about conduct that they asserted to be sexual harassment. Following their dismissals, Plaintiffs sued, bringing retaliatory-termination claims along with several other claims under California law relating to the conditions of their employment. SpaceX moved to compel arbitration. Plaintiffs opposed, arguing that the EFAA exempts their case from arbitration. The district court agreed with Plaintiffs and denied SpaceX's motion.

SpaceX appeals, arguing that the EFAA does not apply to Plaintiffs' case. We disagree and therefore affirm.

**I.**

Congress enacted the EFAA in response to reports that exposed pervasive sexual misconduct at various companies. Some of those companies were requiring victims to resolve their claims in confidential arbitration, thereby "shield[ing] this misconduct from public scrutiny." H.R. Rep. No. 117-234, at 10–12 (2022). The EFAA is an amendment to the Federal Arbitration Act ("FAA"), creating an exception to the FAA's general rule that arbitration agreements are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The EFAA's operative provision, § 402(a), states:

> Notwithstanding any other provision of [the FAA], at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

9 U.S.C. § 402(a). The other section of the EFAA, § 401, contains statutory definitions. Section 401(4) provides that "[t]he term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4).

In simple terms, the EFAA permits a person alleging a sexual harassment dispute to avoid an arbitration agreement that would otherwise sweep her case into arbitration under the FAA. And "[b]ecause the EFAA invalidates an arbitration agreement 'with respect to a case'—rather than a claim—that 'relates to' a sexual harassment dispute," a plaintiff who successfully invokes the statute (by alleging at least one claim that "relates to" a sexual harassment dispute) may avoid arbitration of her "entire case" even if not all of the individual claims in her case relate to sexual harassment. *Ding v. Structure Therapeutics, Inc.*, 187 F.4th 1231, 1241 (9th Cir. 2026) (quoting 9 U.S.C. § 402(a)).

## II.

### A.

SpaceX is a space technology company founded and led by Elon Musk. According to the Complaint, while Plaintiffs were employed at SpaceX, sexual banter, sexual harassment, and gender discrimination were commonplace. Plaintiffs allege that Musk normalized and encouraged such conduct, particularly through his posts on Twitter (now X). The Complaint avers that Musk "intentionally drew employee attention to his Twitter feed by frequently using the account to report out company news," such as updates on rocket launches. But Plaintiffs say that he interspersed that news with sexually explicit posts, as well as some that demeaned women and LGBTQ persons. Plaintiffs point to numerous examples from Musk's account, which include:

***3** • Announcing his "idea" to create a Texas university similar to MIT which he would call "TITS" and where "Ds [women's bra size] would get degrees," accompanied by an altered photo rendering a rocket to appear to be a giant penis;

• Posting a skeletal x-ray of a person holding their lower back with the comment "My back after carrying my huge cock all day."

• Posting an angry face in response to LGBTQ icons, with the statement "June is almost here — here it comes!" (Referencing gay pride month);

• Posting "Jack in the Box should do double duty as a sperm donor clinic — name is 👌" and replying to his own post with: "Wow, this mayo sure is salty!"

Plaintiffs allege that Musk's posts were widely shared among SpaceX employees such that they "permeated" the workplace.

After several national news outlets reported on allegations of sexual harassment at SpaceX, and based on their own experiences, Plaintiffs drafted an "Open Letter" to SpaceX management. The letter raised concerns about SpaceX's work environment and its processes for addressing alleged misconduct. Plaintiffs focused on Musk's Twitter posts, asserting that the posts constituted "sexual harassment."

Plaintiffs sent the letter directly to SpaceX management and circulated it among their colleagues. Several Plaintiffs publicly identified themselves as authors of the Open Letter. The day after Plaintiffs circulated the letter, SpaceX terminated four Plaintiffs who were identified as authors. SpaceX's stated reason for firing them was their role in "conceiving, writing, and distributing the Open Letter." In the following weeks, SpaceX's human resources department investigated employees



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

suspected of assisting with the Open Letter, including the four remaining Plaintiffs. In the course of the investigations, each of those Plaintiffs admitted to participating in drafting the Open Letter. Soon after their admissions, SpaceX fired them too.

### B.

Following their terminations, Plaintiffs sued SpaceX in state court, asserting various claims under California law relating to their employment conditions and terminations. Plaintiffs' claims fall into five categories: hostile-work-environment sexual harassment created by Musk's Twitter posts; sexual harassment by coworkers; failure to prevent discrimination, harassment, and retaliation; gender discrimination; and retaliatory termination for opposing alleged sexual harassment through the Open Letter. Some Plaintiffs assert only a subset of those claims—the sole claim common to all eight Plaintiffs is the retaliatory-termination claim.[1]

1 Only one Plaintiff, Claire Mallon, asserts sexual harassment by coworkers. SpaceX argues that Mallon's claim is untimely under the EFAA, which applies to "any dispute or claim that arises or accrues on or after" March 3, 2022. 9 U.S.C. § 401 note. Because we conclude that the EFAA applies regardless of the timeliness of Mallon's individual claim, we do not reach SpaceX's argument. If appropriate, SpaceX may raise any timeliness defense at a later stage of the proceedings.

SpaceX did not move to dismiss Plaintiffs' claims. Instead, SpaceX filed an Answer to the Complaint and then removed the case to federal court, arguing that there was diversity jurisdiction. Once in federal court, SpaceX asserted that all eight Plaintiffs had signed arbitration agreements as part of their employment contracts and moved to compel arbitration under the FAA.

***4** Anticipating that Plaintiffs would invoke the EFAA, SpaceX argued that the statute did not exempt Plaintiffs' claims from arbitration. SpaceX asserted that the EFAA requires "adequately alleged" sexual harassment—by that, SpaceX meant allegations that state a claim that would survive a motion to dismiss under the federal pleading standard. According to SpaceX, adequately alleged sexual harassment is required regardless of whether the plaintiff is alleging a hostile work environment, quid pro quo harassment, or some other legal theory. Relying on that interpretation of the EFAA, SpaceX argued that Plaintiffs failed to adequately allege a hostile work environment caused by Musk's Twitter posts because the posts were not severe or pervasive enough to affect the terms or conditions of Plaintiffs' employment. *See* *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). And because Musk's posts did not constitute sexual harassment, SpaceX reasoned, Plaintiffs could not "bootstrap" their way out of arbitration by alleging retaliation for opposing that conduct. Alternatively, SpaceX argued that Plaintiffs' retaliation claims did not trigger the statute because they were not "harassment claims."[2]

2 SpaceX also argued in the district court and on appeal that the EFAA applies selectively to sexual harassment claims, not to a plaintiff's entire case—such that even if sexual harassment claims could remain in federal court under the EFAA, any claims unrelated to sexual harassment had to be severed and sent to arbitration. While SpaceX's appeal was pending, however, our court rejected that theory, holding that the EFAA exempts a plaintiff's "entire case" from arbitration. *Ding v. Structure Therapeutics, Inc.*, 187 F.4th 1231, 1241 (9th Cir. 2026).

The district court disagreed and denied SpaceX's motion to compel arbitration.[3] SpaceX timely appealed that denial pursuant to 9 U.S.C. § 16(a)(1).

3 The district court had subject matter jurisdiction over this case under the diversity statute, 28 U.S.C. § 1332. *Moe v. GEICO Indem. Co.*, 73 F.4th 757, 761 (9th Cir. 2023) ("[T]he court of appeals has an independent duty to satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." (citation modified)). All Plaintiffs are residents of California or Washington, and the only issue potentially in dispute for



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

purposes of assessing diversity jurisdiction is whether SpaceX's "principal place of business" is in Texas. 28 U.S.C. § 1332(c)(1). The district court found, among other things, that the three most senior officers at SpaceX are all based in Texas, and that those officers made the most "[c]ritical companywide decisions." *See* *Hertz Corp. v. Friend*, 559 U.S. 77, 80, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010) (explaining that a corporation's "principal place of business" is "where the corporation's high level officers direct, control, and coordinate the corporation's activities"). In light of those and other factual findings, which Plaintiffs failed to specifically challenge on appeal, the requirements for jurisdiction under § 1332 are satisfied.

### III.

We review the denial of a motion to compel arbitration de novo. *Olson v. FCA US, LLC*, 176 F.4th 612, 616 (9th Cir. 2026). "The construction or interpretation of a statute is a question of law also reviewed de novo." *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012).

### IV.

### A.

SpaceX first contends that Plaintiffs' allegations do not satisfy the EFAA's definition of "sexual harassment dispute" under § 401(4). To interpret that definition, "we begin by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (citation modified). Again, § 401(4) defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

For a dispute to fall within the definition, there must be "conduct that is alleged to constitute" sexual harassment. *Id.* The ordinary meaning of "allege" is "[t]o assert to be true; affirm ... [t]o assert prior to a final determination." *Allege*, Am. Heritage Dictionary (5th ed. 2016); *see also id.* (defining "alleged" as "[r]epresented as existing or as being as described but not so proved; supposed"); *Allege*, Merriam-Webster's Collegiate Dictionary (11th ed. 2020) ("to assert without proof or before proving"). The legal meaning of "allege" is the same: "To assert as true, esp. that someone has done something wrong, though no occasion for definitive proof has yet occurred." *Allege*, Black's Law Dictionary (11th ed. 2019); *see* *Kemp v. United States*, 596 U.S. 528, 534, 142 S.Ct. 1856, 213 L.Ed.2d 90 (2022) (determining a word's "legal meaning" using Black's Law Dictionary). Thus, among lawyers and laypeople alike, to "allege" something means to assert it as true, although its truth remains to be determined. *See* *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 65, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (acknowledging that a plaintiff's "allegations of [a legal] violation" may turn out to be "untrue").[4] And the meaning of "constitute" is "[t]o amount to; equal." *Constitute*, Am. Heritage Dictionary (5th ed. 2016); *see also Constitute*, Black's Law Dictionary (11th ed. 2019) ("To make up or form.").

4 Occasionally, "lay and legal dictionaries" will define the same word differently, indicating that the word has a special meaning in "legal usage." *Kemp v. United States*, 596 U.S. 528, 534, 142 S.Ct. 1856, 213 L.Ed.2d 90 (2022). When the choice is between ordinary and legal meanings, courts look to the word's context to determine which meaning controls. *See* *United States v. Hansen*, 599 U.S. 762, 774–75, 143 S.Ct. 1932, 216 L.Ed.2d 692 (2023) (using statutory context to determine whether the words "encourages or induces" carried their "ordinary" meanings or their "specialized, criminal-law" meanings). But because there is no evidence that lay and legal dictionaries define



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

"allege" differently, that issue is not present here.

***5** Putting those definitions together, the phrase "conduct that is alleged to constitute sexual harassment" means "conduct that is asserted to amount to sexual harassment." Because the word "allege" requires only an assertion, which may or may not eventually be proven meritorious, § 401(4)'s plain terms are not limited to conduct that *certainly* amounts to sexual harassment.[5] Rather, to decide if § 401(4)'s definition is satisfied, courts must determine whether the plaintiff's complaint describes conduct asserted to be a basis for a sexual harassment claim.

5 The dissent posits that the definition of allege "emphatically does not include just any 'assert[ion].' " Dissent at ——. For support, the dissent quotes from a dictionary's instruction that "[*a*]*llege* should not be used as a synonym of *assert, maintain, declare*, or *claim*." Bryan A. Garner, Garner's Modern American Usage 34 (3d ed. 2009). Yet the full entry explains that the terms are distinct only because "*[a]llege* has peculiarly accusatory connotations," not because it implies a higher standard of plausibility. *Id.* Black's Law Dictionary also fails to support the notion that the dissent's narrow definition is the correct one. *Allegation*, Black's Law Dictionary (11th ed. 2019) (defining an allegation as "[s]omething declared or asserted as a matter of fact," as the dissent notes, but also as "[a] declaration that something is true").

SpaceX, however, argues that § 401(4) demands more—in particular, allegations of sexual harassment that meet the federal pleading standard in the sense of being able to survive a motion to dismiss for failure to state a claim.[6] But the statutory language makes no reference to the federal pleading standard. The federal pleading standard arises from Federal Rule of Civil Procedure 8, which states that a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted Rule 8 to require "adequate" allegations, meaning the complaint must contain sufficient "nonconclusory factual allegation[s]" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 670, 678–80, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Yet the EFAA's definition of "sexual harassment dispute" does not say that a plaintiff must "adequately allege" sexual harassment, "state a claim to relief that is plausible on its face," or provide a "short and plain statement" showing entitlement to relief.

6 We have interpreted the EFAA in two prior cases, but neither resolved whether the statute requires allegations that meet the federal pleading standard. In *Ding v. Structure Therapeutics, Inc.*, 187 F.4th 1231, 1239 (9th Cir. 2026), we assumed without deciding that the EFAA imposes that requirement. And in *Combs v. Netflix, Inc.*, 180 F.4th 1201 (9th Cir. 2026), we held that a complaint that "allege[d] conduct constituting unlawful sexual harassment" "presumptively f[e]ll within the EFAA." *Id.* at 1204. In treating the complaint there as sufficient to invoke the EFAA, *Combs* did not address what is necessary to bring a complaint within the statute's reach.

SpaceX proposes that "allege" carries a specialized meaning when Congress uses it in a statute. SpaceX observes that, "[w]hen the EFAA was passed (and for decades before), it was firmly settled under federal law that a plaintiff's [complaint] needs 'to provide the grounds of his entitlement to relief' " to survive a motion to dismiss. *See* *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937; *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. We do presume that Congress was aware of the federal pleading standard when it enacted the EFAA. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 233, 140 S.Ct. 1062, 206 L.Ed.2d 271 (2020); *see also* *Progressive W. Ins. v. Preciado*, 479 F.3d 1014, 1018 (9th Cir. 2007) (opining that the presumption that Congress knows the legal context in which it is legislating is "especially appropriate" where that context "features a longstanding, near-canonical rule" (citation omitted)). But when Congress wants to require allegations that meet the federal pleading standard, it has typically said so expressly. *See, e.g.*, 2 U.S.C. § 1405(b) ("A hearing officer may dismiss any claim that the hearing officer finds to be frivolous or that fails to state a claim upon which relief may be granted."); *cf.* 28 U.S.C. § 1867(d) (requiring a person challenging jury selection procedures to submit a "statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title"). Congress could have easily drafted the EFAA to require courts to send sexual harassment disputes to arbitration only when the complaint "fails to state a claim upon which relief may be granted" or "fails to state facts which, if true, would constitute sexual harassment." That Congress chose not to



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

adopt those "readily available and apparent alternative[s]" is strong evidence that Congress did not intend to import the federal pleading standard into § 401(4). *Knight v. Comm'r*, 552 U.S. 181, 188, 128 S.Ct. 782, 169 L.Ed.2d 652 (2008).

***6** SpaceX correctly points out that, in certain circumstances, statutory terms can carry meanings that depart from their ordinary ones. *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45, 145 S.Ct. 1284, 221 L.Ed.2d 712 (2025). "Congress may, for example, define a word or phrase in a specialized way or employ a term of art with long-encrusted connotations in a given field." *Id.*; *e.g.*, *Corning Glass Works v. Brennan*, 417 U.S. 188, 202, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (explaining that the statutory term "working conditions" carried a specialized meaning "in the language of industrial relations"). But "without strong proof of such a departure, commonly used terms should be given their common meaning." *Mullin v. Doe*, 609 U.S. 324, 343, 146 S.Ct. 2121, 225 L.Ed.2d 594 (2026); *see Feliciano*, 605 U.S. at 45, 145 S.Ct. 1284 ("[T]hose whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden messages."). And given Congress's presumed knowledge of the federal pleading standard and its express reference to that standard in other statutes, the absence of any language referencing the pleading standard, if anything, is proof Congress did not intend to incorporate it into § 401(4).

SpaceX marshals no support for the idea that "allege" in § 401(4)'s definition departs from its usual meaning. The closest SpaceX comes is its reliance on the Supreme Court's decisions in *Twombly* and *Iqbal*, but those decisions did not purport to define the word "allege," let alone indicate that the word means what SpaceX wants it to mean. Rather, *Twombly* and *Iqbal* themselves use "allege" in the usual way. Those cases both held that the complaints at issue did not state a claim, yet the Supreme Court used "allege" to describe their contents. The Court noted in *Iqbal*, for example, that "the complaint *alleges* that [the defendants] adopted an unconstitutional policy," but the Court nonetheless concluded that the complaint was "insufficient" under the federal pleading standard. *Iqbal*, 556 U.S. at 666, 129 S.Ct. 1937 (emphasis added). Similarly, the Court in *Twombly* explained that "[t]he complaint *alleges* that the [defendants] conspired to restrain trade in two ways," yet the Court concluded that it did not state a claim. *Twombly*, 550 U.S. at 550, 570, 127 S.Ct. 1955 (emphasis added). A lawmaker familiar with that legal backdrop would not assume that using "allege" in a statute would mean that, for the statute to apply, the allegations must be legally sufficient to survive a motion to dismiss.

SpaceX nevertheless insists that "allege" must mean "adequately alleged" when read in context in § 401(4). SpaceX points out that the definition requires conduct "alleged to constitute sexual harassment *under applicable Federal, Tribal, or State law.*" SpaceX contends that the "under applicable law" clause "adds a legal dimension to the required allegation"—that is, it requires alleging that certain conduct violates the law. An allegation that conduct violates the law is a legal conclusion. SpaceX observes that, for a complaint to survive a motion to dismiss under the federal pleading standard, legal conclusions are not enough—they must be supported by sufficient factual allegations. *See Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937. SpaceX then asserts that "Congress would not depart from the usual standards for assessing pleadings" in drafting this statute. Thus, SpaceX concludes, the inclusion of the "under applicable law" clause means that a complaint must contain adequate *factual* allegations to state a legal claim for sexual harassment as defined under applicable law.

Again, SpaceX's argument falters. SpaceX presumes that "Congress would not depart" from the federal pleading standard in drafting this statute, but, as we have explained, *see supra* at ––––, Congress's decision to expressly incorporate the federal pleading standard in other statutes suggests that the choice not to do so in § 401(4) was intentional. Further, just because legal conclusions alone are insufficient to survive a motion to dismiss, it does not follow that the word "alleged" necessarily means "adequately alleged" when the allegation is that certain conduct violates the law. To the contrary, courts frequently state that a plaintiff "alleged" a legal violation without implying that the allegations are sufficient to state a claim. *See, e.g.*, *Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068, 1075 (9th Cir. 2021) (holding that a complaint that "alleged violations of California meal- and rest-break laws" failed to state a claim); *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1158 (9th Cir. 2023) (affirming dismissal of a complaint that "alleged a violation of the [Telephone Consumer Protection Act]" for failure to state a claim); *see also Iqbal*, 556 U.S. at 666, 684, 129 S.Ct. 1937 (noting that the complaint "alleged deprivations" of



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

"various constitutional protections" by defendants who were not parties to the petition while "express[ing] no opinion concerning the sufficiency of [the] complaint" as to those defendants).

***7** By contrast, when analyzing whether allegations meet the pleading standard, courts typically have used the adverbs "adequately" or "plausibly" to clarify that they are not referring to *mere* allegations. *See, e.g., PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 833 (9th Cir. 2022) ("We consider first whether PLS has *adequately alleged* a Sherman Act violation." (emphasis added)); *see also Brownback v. King*, 592 U.S. 209, 217–18, 141 S.Ct. 740, 209 L.Ed.2d 33 (2021) ("[A] plaintiff must *plausibly allege* all six [Federal Tort Claims Act] elements ... to state a claim upon which relief can be granted." (emphasis added)). There is no reason to believe Congress used "allege" in a more technical sense than how courts typically use it. Accordingly, § 401(4)'s "under applicable Federal, Tribal, or State law" clause simply makes clear that a plaintiff must contend that there was a legal violation under an applicable part of one of those bodies of law (as opposed to, for example, under foreign law or a law unrelated to sexual harassment).

The dissent acknowledges that "two definitions [of allege] exist—one with a broader remit than the other." Dissent at ––––. The first is the ordinary meaning of allege: to assert as true, although its truth remains to be determined. *Supra* at ––––. The second, which the dissent adopts in its reading of the EFAA, is "to state facts that, if true, would establish that an opposing party's conduct constitutes a legal violation." Dissent at ––––. The dissent has found examples showing that "courts sometimes use the unadorned term 'allege' to refer to statements of fact and sometimes to include statements of law." Dissent at ––––. We agree that, in rare instances, "allege" has been used as shorthand for "adequately allege."[7] Yet the dissent does not explain why the more restrictive meaning applies here. As explained above, interpreting the EFAA using the ordinary meaning of "alleged" points the other way. So does the statute's context. *See Smith v. United States*, 508 U.S. 223, 229, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) ("[A] word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it.").

7 That said, several of the cases the dissent marshals to support reading allege to mean "adequately allege," *see* Dissent at –––– – ––––, support both meanings. In *Breininger v. Sheet Metal Workers International Ass'n Local Union No. 6*, 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), the Supreme Court used "allege" both to recount the fact that the petitioner had "alleged" certain facts in his complaint, *id.* at 72, 110 S.Ct. 424, as well as to conclude that the petitioner "ha[d] not alleged a violation" of a statute because he "did not allege acts by the union amounting to 'discipline' within the meaning of the statute," *id.* at 94, 110 S.Ct. 424. And *Moore v. United Kingdom*, 384 F.3d 1079 (9th Cir. 2004), involved a particular statute, the Foreign Sovereign Immunities Act, which, unlike the EFAA, contained a merits standard written into the provision in question. *See id.* at 1090 (explaining that the Foreign Sovereign Immunities Act provides that " '[n]o judgment by default shall be entered by a court of the United States ... against a foreign state ... unless the claimant establishes his claim or right to relief by evidence satisfactory to the court' " (quoting 28 U.S.C. § 1608(e)). Because the plaintiff had failed to satisfy that explicitly codified standard, we held there that he had "not adequately alleged" a claim. *Id.*

Recall that the EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). SpaceX's and the dissent's proposed interpretation would, ironically, make the inclusion of "alleged" superfluous. If SpaceX were correct that the definition required conduct that is adequately alleged to constitute sexual harassment, it would have been much simpler to define a sexual harassment dispute as "a dispute relating to conduct that *constitutes* sexual harassment under applicable Federal, Tribal, or State law."

***8** Given the "cardinal principle of statutory construction" that statutes should be interpreted to avoid rendering any word "superfluous, void, or insignificant," *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (citation modified), that result weighs heavily against SpaceX's interpretation. The dissent acknowledges that the EFAA "is a minefield of redundancy," Dissent at ––––, but offers an interpretation that worsens redundancy; following the ordinary meaning of "allege," by contrast, reduces it.[8]



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

[8] For example, the dissent proposes reading "alleged" out of § 401(4) (defining a sexual harassment dispute) because § 401(3) does not use the word to define a sexual assault dispute. Dissent at ––––, –––– – ––––. Doing so would render language that Congress chose to include "void" or "insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (citation modified).

For similar reasons, SpaceX's—and the dissent's—argument that the word "constitute" in § 401(4) imposes the federal pleading standard is no more successful.[9] SpaceX begins by suggesting that "constitute" means "[t]o make up or form," and a "sexual harassment dispute, specifically, must relate to conduct alleged to 'constitute' sexual harassment under applicable law." *See* 9 U.S.C. § 401(4). But from there, SpaceX inexplicably concludes: "Given the normal meaning of 'constitute,' this requirement means the plaintiff [must] set forth allegations of conduct that would establish sexual harassment under applicable law." That might be a reasonable conclusion if the statute defined a sexual harassment dispute as a dispute relating to "conduct that *constitutes* sexual harassment" under applicable law, but that is not the definition Congress provided. *See id.* (defining a "sexual harassment dispute" as "a dispute relating to conduct *that is alleged to* constitute sexual harassment under applicable Federal, Tribal, or State law" (emphasis added)).

[9] The dissent looks to § 402(b) to bolster its argument that the EFAA "leaves to the court whether the conduct at issue 'constitutes a sexual harassment dispute,' " and thereby requires Plaintiffs to adequately allege such a dispute. Dissent at –––– (quoting 9 U.S.C. § 402(a)). But that subsection cannot bear the interpretive weight the dissent assigns it. It is purely an anti-delegation clause, ensuring that a court, not an arbitrator, will decide whether a case falls under the EFAA and thus should be litigated in court rather than in arbitration. *Cf.* *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152, 144 S.Ct. 1186, 218 L.Ed.2d 615 (2024) (holding that a court, rather than an arbitrator, must decide which of two contracts—one with a delegation clause and the other with a forum selection clause—controls).

Changing tack, SpaceX contends that the special meaning of "allege" is "clear" when one examines § 4 of the FAA—another provision that uses the word "alleged." Section 4 authorizes courts to issue orders compelling arbitration. *See* 9 U.S.C. § 4. It provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate ... may petition" a court for an order compelling arbitration. *Id.* On SpaceX's telling, "merely *alleging* the failure, neglect, or refusal is insufficient if the opposing party is not *actually* failing, neglecting, or refusing to arbitrate." SpaceX urges us to interpret "alleged" consistently across § 4 and § 401(4).

But interpreting "alleged" consistently across those provisions only bolsters our conclusion. SpaceX misapprehends § 4—as the text makes clear, to invoke the FAA in the first place and file a petition, a party must only *assert* that its adversary is improperly refusing to arbitrate. *Id.* (permitting "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" to "petition any United States district court"). By contrast, to ultimately obtain an order compelling arbitration, the petitioner must prove that its adversary actually refused to arbitrate despite a valid arbitration agreement. *See id.* The court may not compel arbitration unless it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.* And "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform [is] in issue, the court shall proceed summarily to the trial thereof." *Id.*; *see also* *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1181 (9th Cir. 2025) ("By its plain terms, the provision conditions a district court's authority to compel arbitration upon *a showing* that a party has failed, neglected, or refused to arbitrate." (emphasis added)). Looking at § 4 and § 401(4) together strengthens the inference that Congress did not intend to tie § 401(4) to any showing beyond what the plaintiff has alleged (as that word is normally understood).[10]

[10] SpaceX does not cite any cases that have adopted its novel interpretation of "alleged" in applying § 4. SpaceX points to *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004), but that case is inapposite. In *Lifescan*, we held that under the specific terms of the parties' arbitration agreement, one party's inability to pay the full arbitration fees did not constitute a "failure, neglect, or refusal" to arbitrate warranting an order compelling arbitration. *Id.* at 1013. Nothing in *Lifescan* turned on the meaning of "alleged"—in fact, the word does not



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

even appear in the opinion.

***9** Our conclusion regarding the meaning of "allege" is confirmed by the word's use in similar legal contexts. For instance, Federal Rule of Evidence 415 provides that, "[i]n a civil case involving a claim for relief based on a party's *alleged* sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation." Fed. R. Evid. 415(a) (emphasis added).[11] Imagine a case in which a plaintiff accuses a defendant of sexual assault but fails to adequately allege one of the elements of assault in her complaint, yet the defendant does not move to dismiss those allegations. On SpaceX's theory, if the plaintiff later moves at trial to admit evidence of a prior sexual assault by the defendant, the defendant could oppose on the ground that the plaintiff failed to "adequately allege" sexual assault in her complaint. But no one understands "alleged" in Rule 415 as creating a pleading hurdle to introducing evidence of the defendant's other acts of assault.

11 Federal Rule of Evidence 415 was initially promulgated before the Supreme Court decided *Twombly* and *Iqbal*, but the current version of the rule, which Congress reviewed, reflects revisions that were made after those decisions. Fed. R. Evid. 415 advisory committee's note to 2011 amendment; *see* 28 U.S.C. §§ 2072–74 (requiring the Supreme Court to transmit proposed rules to Congress for review and an opportunity to object prior to the rules' becoming effective).

Finally, SpaceX argues that rejecting its interpretation of the EFAA will lead to undesirable consequences. Not only are SpaceX's policy concerns irrelevant in the face of "a plain statutory command," *Niz-Chavez v. Garland*, 593 U.S. 155, 171, 141 S.Ct. 1474, 209 L.Ed.2d 433 (2021), but they are also unpersuasive.

SpaceX contends that if the definition does not impose the federal pleading standard, plaintiffs will be able to avoid arbitration by "plac[ing] a 'sexual harassment' label on conduct that does not actually constitute sexual harassment." But there is an obvious remedy for that problem: the defendant may file a motion to dismiss. Indeed, federal courts must dismiss frivolous claims sua sponte. *See* *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

When dismissing for failure to state a claim, of course, district courts often must provide plaintiffs with an opportunity to amend their complaints. *See* Fed. R. Civ. P. 15(a)(2); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034–35 (9th Cir. 2008). If the plaintiff makes sufficient allegations upon amendment of her complaint, then any subsequent motion to dismiss should be denied, and her case may proceed in court. If she is unable to state a claim, her claims will eventually be dismissed with prejudice. And, all the while, the parties and their lawyers are under the continuing obligation to present pleadings that meet the requirements imposed by Rule 11. Fed. R. Civ. P. 11.

The dissent's contrary warning that our interpretation of the EFAA marks a "sweeping dispatch of fundamental pleading standards" rings hollow. Dissent at ——. Parties in EFAA lawsuits will still follow the normal procedures for filing a motion to dismiss, in line with the common law history the dissent recounts. Dissent at —— – ——. The interpretive question is whether a court or an arbitrator is the one to rule on that motion to dismiss. The EFAA tells us that the sexual harassment dispute should be resolved in court. SpaceX's preferred interpretation, by contrast, renders the statute underinclusive: it would send many sexual harassment cases—including meritorious ones—to arbitration, without an opportunity to amend first in response to a district court's ruling. When a court grants a defendant's motion to compel arbitration, the plaintiff does not have the opportunity to file an amended complaint or appeal the ruling. *See* 9 U.S.C. § 16 (providing appellate jurisdiction over orders denying motions to compel arbitration but not orders compelling arbitration). Orders compelling arbitration therefore almost invariably spell the end of a plaintiff's presence in court. So even if a plaintiff would have been able to make adequate allegations on her second try and ultimately obtain a favorable judgment, SpaceX's interpretation would require that plaintiff to arbitrate her claims.

***10** SpaceX protests that defendants should not be required to "file a separate 12(b)(6) motion as to any purported sexual harassment claims." But SpaceX's aversion to filing a Rule 12(b)(6) motion is difficult to understand. Nothing prevents



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

defendants from being haled into court in the first place, so a defendant would at least need to file a motion to compel arbitration to get out of court. Under SpaceX's interpretation of the EFAA, that motion would have to argue that the plaintiff's sexual harassment allegations would not survive a Rule 12(b)(6) motion, because (according to SpaceX) § 401(4) incorporates that standard. Indeed, that is what SpaceX did in this case: SpaceX did not file a motion to dismiss, but it then argued in its motion to compel arbitration that Plaintiffs belonged in arbitration because they "cannot plead plausible claims for hostile work environment sexual harassment." Even on SpaceX's theory, defendants would still need to marshal arguments about the sufficiency of plaintiffs' sexual harassment allegations—the difference is just that defendants would make those arguments as part of a motion to compel, rather than in a Rule 12(b)(6) motion. That minor difference does nothing to revive SpaceX's atextual interpretation of the statute.

SpaceX and the dissent also worry that filing a motion to dismiss could be deemed a waiver of SpaceX's right to compel arbitration of other claims in multi-claim cases. Dissent at ––––––; *see* *Morgan v. Sundance, Inc.*, 596 U.S. 411, 413–14, 142 S.Ct. 1708, 212 L.Ed.2d 753 (2022). That concern is misplaced. The EFAA precludes arbitration of an "entire case" that "relates to" the sexual harassment dispute. *Ding*, 187 F.4th at 1241 (quoting 9 U.S.C. § 402(a)). The present tense ("relates to") indicates that the relatedness requirement is continuing, so the EFAA will apply only so long as a sexual harassment dispute is part of the case. *See* *Carr v. United States*, 560 U.S. 438, 449, 130 S.Ct. 2229, 176 L.Ed.2d 1152 (2010) (explaining that "[a] statute's undeviating use of the present tense" is a "striking indicator of its prospective orientation" (citation modified)). There is no risk of waiver under these circumstances because "[w]aiver" is "the intentional relinquishment or abandonment of a known right." *Morgan*, 596 U.S. at 417, 142 S.Ct. 1708 (citation modified). Only if a defendant is successful in obtaining dismissal of all claims premised on sexual harassment disputes will that defendant (if still facing other claims) have a right to compel arbitration that could be subject to waiver. Because the EFAA precludes arbitration with respect to the entire case, prior to that dismissal, there is no right for a defendant to waive.

Ultimately, SpaceX's arguments reflect a preference for arbitration as a forum. Many companies have arbitration agreements because they, like SpaceX, prefer arbitration. But Congress enacted the EFAA specifically to override that preference and to permit sexual misconduct claims to proceed in court. *See* *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) ("The deals brokered [in Congress] are not for us to judge or second-guess."). Because SpaceX's arguments would require us to reject that basic aim, embodied in the statutory text, we must reject them.

## B.

We next turn to whether Plaintiffs properly invoked the EFAA in this case. Under § 402(a), a plaintiff may avoid arbitration of her case if she is "alleging conduct constituting a sexual harassment dispute" and if her case "relates to ... the sexual harassment dispute." 9 U.S.C. § 402(a); *see also* *Ding*, 187 F.4th at 1241. We conclude that Plaintiffs have satisfied both conditions.

First, by alleging that SpaceX retaliated against them for opposing conduct that they assert amounts to sexual harassment (Musk's Twitter posts), Plaintiffs have "alleg[ed] conduct constituting" a "sexual harassment dispute." That follows from the definition of "sexual harassment dispute": "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable" law. 9 U.S.C. § 401(4). As explained, the definition requires an assertion that certain conduct amounted to sexual harassment under applicable law. Plaintiffs' allegation in their Complaint that Musk "engaged in sexually harassing conduct and creat[ed] a hostile work environment" in violation of California employment law meets that requirement. Next, "[t]he phrase 'relating to' sweeps broadly"—one thing relates to another if they share a "connection," so long as that connection is "not tenuous, remote, or peripheral." *Chevron USA Inc. v. Plaquemines Parish*, 608 U.S. 1, 11–12, 146 S.Ct. 1052, 224 L.Ed.2d 535 (2026) (citation modified). Where, as here, an employer allegedly punishes an employee for opposing alleged unlawful sexual harassment and the employee challenges her punishment, their dispute over the retaliation is directly connected to "conduct that is alleged to constitute sexual harassment." 9 U.S.C. § 401(4); *see* *Olivieri v. Stifel, Nicolaus &*



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024) (holding that "retaliation resulting from a report of sexual harassment" is a "sexual harassment dispute" within the meaning of the EFAA).[12]

12 At times, SpaceX appears to also suggest that the phrase "alleging conduct constituting a sexual harassment dispute" in § 402(a) imposes the federal pleading standard. To the extent SpaceX is making such an argument, we need not resolve it. For the reasons we have explained, the *retaliation* allegations Plaintiffs assert, if proven, would amount to "conduct constituting a sexual harassment dispute," so they satisfy SpaceX's proposed standard. In other words, there is no question that Plaintiffs here sufficiently alleged that they were retaliated against for circulating their Open Letter.

***11** Second, and for similar reasons, Plaintiffs' case "relates to" that sexual harassment dispute. 9 U.S.C. § 402(a). As noted, the term "relates to" is broad, but it is "not so broad that it is meaningless." *See* *Chevron USA Inc.*, 608 U.S. at 11, 146 S.Ct. 1052 (citation modified). It is insufficient for a complaint to contain a cursory or peripheral reference to a sexual harassment dispute. The allegations concerning the sexual harassment dispute must be relevant to the case—meaning they must be charges of misconduct for which the plaintiff is seeking relief.[13] Thus, to satisfy the "relates to" standard, a plaintiff must assert at least one claim premised on a "sexual harassment dispute." *See* *Ding*, 187 F.4th at 1241. Because each Plaintiff here brings a claim challenging their terminations that were allegedly in response to their accusations about sexual harassment, each Plaintiff has met the "relates to" bar and has thus invoked the EFAA with respect to an "entire case."[14] *Id.*

13 The dissent is wrong to worry that an employee fired over a cafeteria dispute could describe it as a sexual harassment dispute and thereby avoid arbitration under the EFAA. *See* Dissent at ——. The role of Rule 11 is to prevent such frivolous pleadings, and it has established enforcement mechanisms. Fed. R. Civ. P. 11.

14 Because Plaintiffs' alleged retaliatory terminations qualify as sexual harassment disputes, we need not and do not decide whether any of the other alleged disputes in the Complaint would qualify as well. *See* *Ding*, 187 F.4th at 1241. And because each Plaintiff independently meets the EFAA's requirements, we also decline to decide how the EFAA would apply in joint actions where not every plaintiff asserts at least one claim premised on a sexual harassment dispute.

We are, again, unconvinced by SpaceX's contrary arguments. SpaceX first suggests that retaliation for opposing alleged sexual harassment is not a "sexual harassment dispute" because it is not itself "sexual harassment." That theory is unmoored from the text of § 401(4). The definition of "sexual harassment dispute" is not limited to sexual harassment; it includes "dispute[s] *relating to* conduct that is alleged to constitute sexual harassment." 9 U.S.C. § 401(4) (emphasis added). And retaliation for opposing alleged sexual harassment falls within that definition. SpaceX next asserts that, even if retaliation could qualify as a "sexual harassment dispute" in other cases, Plaintiffs' allegations here do not suffice because Plaintiffs fail to allege that they opposed conduct "that was actually sexual harassment" under the law. But that contention is simply a repackaging of SpaceX's pleading standard argument, which we already rejected.

## V.

For the foregoing reasons, we **AFFIRM**.

TUNG, Circuit Judge, dissenting:

Imagine an employee fights with his boss about the food in the office cafeteria. After an exchange of heated emails, he is fired. Within days he is in federal court, litigating dozens of workplace grievances. One is a claim of retaliation, which he has premised on a single, conclusory allegation that the culinary choice constitutes "sexual harassment." Clearly it does not, and



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

any federal court would write off such an allegation as frivolous. But today, in refusing to enforce an arbitration agreement, the majority adopts the opposite view: an employee can evade arbitration simply by *saying* that the dispute is about sexual harassment—even if the conduct alleged would not remotely constitute sexual harassment under the law. A bare assertion, says the majority, is enough.

No, it is not. Traditionally, courts do not blindly accept as true a party's mere *assertion* that the conduct alleged constitutes a legal violation. The judicial function generally requires that judges decide whether the facts alleged rise to the level of a violation under applicable law. While we may accept the alleged *facts* as true at the pleading stage, we do not rely on a party's say-so with regard to matters of *law.* Normally, too, judges are accustomed to applying the federal-law declaration that contracts to arbitrate are "valid" and "enforceable." 9 U.S.C. § 2. So when a plaintiff comes into court with a complaint that he agreed to arbitrate, a federal court will require him to go use his agreed-upon forum.

***12** The majority thinks those longstanding principles were upended in 2022, when an amendment to the Federal Arbitration Act—the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, or the EFAA—made an exception to the enforceability of arbitration agreements for sexual assault and harassment suits. Now a victim of sexual harassment can negate an arbitration agreement (and prevent the district court from compelling arbitration) to the extent that the complaint "alleg[es] conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a).

This language reflects the ordinary duties of federal courts: assume the facts in a plaintiff's complaint are true and see if they sum up to sexual harassment. But the majority instead reads one word ("allege") in the definition of "sexual harassment dispute" to displace this established understanding: as long as plaintiffs "assert[ ]" that the conduct they complain of "amount[s] to sexual harassment," Majority at ——, the whole case stays in federal court, even if the case includes other claims that purportedly have nothing to do with sexual harassment.

That cannot be what Congress meant. We know that from the statute itself, which requires plaintiffs to "alleg[e] *conduct* constituting a sexual harassment dispute." 9 U.S.C. § 402(a). And the definition of a sexual harassment dispute also requires that the dispute relate to alleged conduct constituting sexual harassment "under applicable Federal, Tribal, or State law." *Id.* § 401(4). It is exclusively the province of the courts to discern the boundaries of these provisions. *Id.* at § 402(b). Taken together, these provisions paint a clear picture: courts are to assess whether plaintiffs have pleaded facts that, if proven true, would constitute sexual harassment under applicable law. I respectfully dissent from the majority's contrary judgment.

## I.

Congress passed the FAA in 1925 "to counteract the 'widespread judicial hostility to arbitration agreements.' " *Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212 (9th Cir. 2026) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011)). The FAA requires courts to "place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339, 131 S.Ct. 1740 (citation omitted).

Congress has created narrow exceptions to this rule. Some have existed for many years. For instance, the FAA does not apply to transportation workers engaged in interstate commerce. *See* *Flowers Foods, Inc. v. Brock*, 608 U.S. 380, 146 S.Ct. 1358, 225 L.Ed.2d 1 (2026). Others are new. Since 2022, "at the election of the person alleging conduct constituting a sexual harassment dispute," plaintiffs can opt out of otherwise valid arbitration agreements. 9 U.S.C. § 402(a).

Plaintiffs are former employees of SpaceX. When Plaintiffs were hired, they signed contracts to arbitrate any employment disputes, including "harassment" under California law. *E.g.*, ER-95–96 ¶ 3. During Plaintiffs' tenure at SpaceX, Elon Musk



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

posted sexual jokes and memes online. ER-151–53. Some other SpaceX employees purportedly made similar jokes in the workplace. ER-153–54. In response, Plaintiffs circulated an open letter criticizing Musk and the company's leadership. ER-156. SpaceX fired them, ER-158–59, and Plaintiffs sued in state court. ER-147. SpaceX removed the case to federal court, ER-133–34, and moved to compel arbitration. D. Ct. Dkt. 16. The district court denied the motion, ruling that Plaintiffs' Complaint included a "nonfrivolous" allegation that their dispute constituted sexual harassment under the EFAA. ER-18 (citation omitted).

## II.

***13** The parties propose dueling tests for when a plaintiff can take advantage of the EFAA's arbitration carveout. SpaceX argues that Plaintiffs must allege facts that, if proven true, would constitute sexual harassment. Opening Br. at 28. And Plaintiffs argue that they need only assert a nonfrivolous claim that the conduct at issue constitutes sexual harassment. Answering Br. at 15. In other words, they ask us to decide whether it is "actually alleged and with sufficient specificity" that the court can find "a real and nonfrivolous reason to believe that the conduct violates" applicable harassment law. *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 542 (S.D.N.Y. 2024).[1]

[1] The majority rightly rejects Plaintiffs' test. Plaintiffs' analogy to jurisdictional cases fails because the "nonfrivolous" test is not a background pleading standard. It is cabined to 28 U.S.C. § 1331 and governs jurisdiction over cases "arising under" federal law—not a complaint's allegations. The EFAA is not jurisdictional. It governs the enforcement of contracts and can be waived "at the election" of one alleging sexual harassment—something no party could do if it were jurisdictional. The Supreme Court has rightly declined to import a test interpreting a jurisdictional statute to statutes with "different language." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 184, 137 S.Ct. 1312, 197 L.Ed.2d 663 (2017). So should we.

The majority goes further. Under the majority's test, a plaintiff can escape an arbitration agreement if his complaint so much as *purports* to allege a sexual harassment dispute. In other words, the majority accepts a plaintiff's bare *legal* assertion, no matter how mistaken.

To be fair, the majority has a non-trivial textual argument for this conclusion. The syntax of the definitional provision at least *appears* to suggest that an unadorned legal statement can place conduct within the statute's coverage. Perhaps if we could shear this single provision of its statutory and procedural context, I would agree with the majority's reading. We cannot, and should not, do that. That context—and general legal principles—teach us that, as used in this statute, "allege" is a legal idiom meaning something like "state facts, which, if true, prove a legal claim."

### A.

"Allege" is a term of multiple meanings. One meaning—the one chosen by the majority—is "to assert [something] as true, although its truth remains to be determined." Majority at ——. But this is not the *only* meaning of "allege." To allege can also mean to state facts that, if true, would establish that an opposing party's conduct constitutes a legal violation. Such allegations leave legal conclusions to the court, as "[a]n allegation is a claim about the facts"—not the law. *Allegation*, 1 Bouvier Law Dictionary 134 (Desk ed. 2012); *see Allege*, Merriam-Webster's Dictionary of Law 23 (2016) ("to state without proof or before proving" or "to state (as a fact) in a pleading"); *see also Allege*, Webster's New International Dictionary 68 (2d ed. 1934) ("To state under oath; to plead in court.... to affirm the fact or truth of ... as, to *allege* a fact."). Contrary to the majority's view, this definition emphatically does not include just any "assert[ion]." Bryan A. Garner, A Dictionary of



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Modern American Usage (Garner) 34 (2008) ("*Allege* should not be used as a synonym of *assert, maintain, declare*, or *claim.*"); *see also Allegation*, Black's Law Dictionary 93 (11th ed. 2019) ("Something declared or asserted as a matter of fact."). Rather, "to allege is to assert facts that suffice to show another party has violated some rule." *Smith v. Meta Platforms, Inc.*, No. 24-cv-4633, 2025 WL 2782484, at *6 (S.D.N.Y. Sept. 30, 2025).

***14** How do we identify which meaning is correct? We look to context. *See* *Dubin v. United States*, 599 U.S. 110, 118, 143 S.Ct. 1557, 216 L.Ed.2d 136 (2023) (stating that words "take[ ] on different meanings depending on context," so we "look not only to the word itself, but also to the statute and the surrounding scheme, to determine the meaning Congress intended" (citation and internal quotation marks omitted)). Here, the context points to a meaning of "allege" under which a plaintiff states facts while leaving legal conclusions for courts to resolve. Indeed, it is not surprising for Congress to choose this more idiomatic sense of "allege" in a statute governing legal procedure.

The statute consists of two relevant provisions. The first, section 402(a), is the operative provision. It tells us *when* a plaintiff can avoid his arbitration agreement: when his complaint "alleg[es] conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). The second, section 401(4), defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). Putting these two provisions together admittedly creates an awkward statute: An arbitration agreement can be invalidated "at the election of a person alleging conduct constituting" a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." Nearly every key term is used twice in slightly different forms and orders. The statute is a minefield of redundancy.

But we can make sense of it. Start with the *operative* provision, section 402, which sets the context for the terms used in the definition. Three features of this provision are telling. First, it asks whether a plaintiff "alleg[ed] *conduct*" amounting to a sexual harassment dispute. Courts are familiar with such standards; they are the very reason our rules require plaintiffs to plead *facts* at all, instead of listing claims without elaboration. *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (asking whether "the well-pleaded factual allegations in the complaint" "state a claim on which relief could be granted"); *cf.* *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("[A] court must accept as true all of the allegations contained in a complaint," but not "legal conclusions.").

Second, the provision uses the term "constitute," which means to "make up or form." Black's Law Dictionary 388 (11th ed. 2019). This term imposes an evaluative requirement: courts must assess whether the alleged conduct qualifies as a sexual harassment dispute. *See* *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648–49, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010) (stating that "facts showing scienter are among those that constitute the violation" because scienter was a "necessary element" of a statutory violation (alteration adopted) (internal quotation marks omitted)); *United States v. Gillis*, 938 F.3d 1181, 1212 n.4 (11th Cir. 2019) (Hull, J., concurring in part and dissenting in part) (arguing that a requirement that "conduct must 'constitute' a felony ... suggests that a threshold inquiry as to the specific conduct the defendant solicited is needed to determine whether that conduct makes up or comprises a felony that satisfies the force element"). That is to say, the conduct must meet the legal elements of a sexual harassment dispute.

Third, section 402(b) reserves the question whether subsection (a) applies to "a court" interpreting "Federal law." 9 U.S.C. § 402(b). That reservation thereby leaves to the court whether the conduct at issue "constitutes a sexual harassment dispute." *Id.* § 402(a). Such a reservation implies a substantive determination, not the ministerial task of skimming a complaint for mentions of "sexual harassment." All told, then, the provision signals judicial evaluation of the underlying allegations.

***15** These three feature reprise, in somewhat altered form, in the definitional provision. First, section 401 again focuses on "conduct that is alleged." Once more, the statute requires that a plaintiff bring forward facts about the dispute. Second, these facts must be "alleged to constitute" sexual harassment. *Id.* § 401(4). Here, "allege[ ]" and "constitute" surely carry the same meaning as in section 402. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 25, at 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text."). So once again, these facts must



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

add up to sexual harassment. Finally, the statute points to a standard by which we may evaluate the allegations: they must constitute sexual harassment "under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Section 401 therefore supplies the standard for judicial review that section 402(b) expects courts to apply.

All these features contemplate judicial inquiry as to whether the *facts* of the complaint constitute a *legal* claim before a plaintiff can invoke the EFAA. The definition of "sexual assault dispute" confirms this reading. Instead of using the term "alleged," the definition refers to a "dispute involving a nonconsensual sexual act or sexual contact," as defined under applicable law. *Id.* § 401(3). This provision clearly requires judicial determination whether facts alleged are legally sufficient. It would be odd, to say the least, if Congress created such a dramatically different inquiry for claims of sexual assault as opposed to claims of sexual harassment.

Central to both the operational and the definitional provisions is *what* the plaintiff must allege: not a legal conclusion, but "conduct." 9 U.S.C. §§ 401(4), 402(a). That is, the "conduct" that is alleged must "constitute" sexual harassment—it must meet a legal standard the text later supplies. The majority's reading renders *both* terms ("conduct" and "constitute") superfluous. We might as well replace the language Congress enacted with one stating that a plaintiff can escape arbitration if he merely "asserts a dispute related to sexual harassment." Such phrasing would communicate the majority's meaning without adding unnecessary terms: after all, the only allegation that matters is the conclusory "sexual harassment" statement.

The majority's position would also render the judicial-review and "under applicable" law provisions virtually superfluous. The majority makes nothing at all of the first provision, confining judges to the clerical task of reviewing complaints to see whether they invoked the talismanic term "sexual harassment."[2] And the latter provision does no more work than requiring a plaintiff to *say* he faced sexual harassment "under Title VII" or state law. *See* Majority at ––––. Such a bare pleading standard is a bizarre requirement to include if the majority's chosen reading is correct. The majority arrogates a role traditionally (and in this statute, expressly) reserved for courts to plaintiffs, giving legal effect to the conclusions of *litigants*, even when they have adduced no facts to support their conclusions.

2 The majority calls this provision "purely an anti-delegation clause." Majority at –––– n.9. Fair enough. But the relevant point for my analysis is that it requires courts to decide *something*. And the statute repeatedly signals that that decision is a capacious inquiry into whether conduct constitutes sexual harassment under applicable law.

To read section 401(4) as requiring courts to defer to a plaintiff's characterization of the law would make mincemeat of both sections 401 and 402, rendering vestigial whole swathes of text.

Against all this the majority points to a single word it says my reading makes superfluous: "alleged" in section 401(4). *Id.* at 20. It is easy to imagine alternative phrasings, true, but their availability does not make the term alleged "void" or "insignificant." *Id.* (citation omitted). Use of "alleged" signals, with brilliant clarity, that a motion to compel arbitration is decided on the basis of plaintiffs' assumed-to-be-true *allegations* of conduct—no discovery necessary. Section 402 tells us that plaintiffs must allege a dispute; section 401(4) tells us that the *alleged* conduct to which the dispute relates must constitute sexual harassment. The majority's alternative way of getting at my position—"conduct that constitutes sexual harassment"—does not communicate that central point so well as the phrasing Congress chose.

**B.**

***16** Our common-law history supports the view that courts should not defer to a party's conclusory legal assertions. In considering a motion to dismiss a complaint, courts assume factual allegations to be true while ignoring bare legal assertions—in other words, they ask whether the facts asserted actually constitute a legal violation. At English common law, a defendant's attack on a complaint (the historical equivalent of a motion to dismiss) was "called a demurrer: and it



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

confesse[d] the facts to be true, as stated by the opposite party; but denie[d] that, by the law arising upon those facts, any injury is done to the plaintiff." 3 William Blackstone, Commentaries on the Laws of England *314 (1769). English courts held that "the demurrer admits all those facts only, that are well pleaded; and the facts alone without the conclusion of law." *Ford v. Peering*, 30 Eng. Rep. 236, 238 (1798).

American courts adopted the traditional common-law standard even before its codification into federal procedural law. *See, e.g., Hall v. Bartlett*, 9 Barb. 297, 301 (N.Y. Sup. Ct. 1850) ("A demurrer admits the facts that are relevant and well pleaded, but not conclusions of law." (citing *Ford*, 30 Eng. Rep. at 238)); *see also United States v. Ames*, 99 U.S. 35, 45, 25 L.Ed. 295 (1878) ("Matters of fact well pleaded are admitted by a demurrer," but "mere conclusions of law are not." (citing *Ford*, 30 Eng. Rep. at 238)).[3] Nineteenth-century courts frequently cited Joseph Story's Commentaries on Equity Pleadings § 452, at 500–01 (5th ed. 1852), which observed: "A demurrer necessarily admits the truth of the facts stated in the Bill, so far as they are relevant and are well pleaded; but it does not admit the conclusions of law drawn therefrom, although they are also alleged in the Bill." And courts continue to recognize this principle today. *See, e.g., Papasan*, 478 U.S. at 286, 106 S.Ct. 2932. To determine whether a complaint "alleges" conduct constituting a violation of the law, then, a court considers only *factual* allegations.

[3] Advocates have likewise recognized this principle. Take the petitioner's observation in *Rhode Island v. Massachusetts*: " 'The party who demurs,' said his lordship [Lord Thurlow], 'admits everything that is well pleaded,' " meaning defendants must "admit the whole" of a complaint's alleged facts but not its "inference[s] of law." 40 U.S. 233, 262, 15 Pet. 233, 10 L.Ed. 721 (1841) (argument of counsel) (quoting reporter's note to *Deloraine v. Brown*, 29 Eng. Rep. 739, 746 n.4, 3 Bro. C.C. 633, 646 n.4 (Ch. 1788) (Lord Thurlow)).

In keeping with this cornerstone pleading principle, courts have long understood "allege" to mean "to assert facts," and have therefore excluded bare legal conclusions. In one formulation, the "facts alledged" must be "sufficient evidence ... to bring the case within the statute." *Bartlett*, 9 Barb. at 301. In another, a "plaintiff must allege facts that, if true, would support" his "claim." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001); *accord Dickson v. Microsoft Corp.*, 309 F.3d 193, 211 (4th Cir. 2002) (holding that "to state a viable [Sherman Act antitrust] claim," a plaintiff is "required to allege facts which, if proven true, would demonstrate" liability under the Act). Several circuits have used similar phrasing. *See, e.g., Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997). Other courts have observed that plaintiffs must "allege a viable cause of action." *Rainbow Trucking, Inc. v. Ennia Ins. Co.*, 88 F.R.D. 596, 597 (E.D. Pa. 1980). Another formulation appears in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 135 S.Ct. 1318, 191 L.Ed.2d 253 (2015), where the plaintiffs sued a company for a material omission in its stock registration statement. The Court held that "[t]o press such a claim, an investor must allege that kind of omission—and not merely by means of conclusory assertions." *Id.* at 194, 135 S.Ct. 1318 (citation omitted). Whether courts require plaintiffs to allege facts that demonstrate liability, allege a viable cause of action, or allege an omission, "allege" routinely means to assert facts. Courts then decide whether those facts state a claim under law.

***17** Against background pleading principles, courts' consistent usage of "allege" demonstrates that where plaintiffs do not state a claim, they do not "allege conduct constituting" that claim. *Cf., e.g., Lee v. Emery*, 10 Minn. 187, 192 (1865) (holding that it is "necessary for [the plaintiff] to allege and show that the defendant ... was the cause" of his injury and that "without an allegation to this effect, the complaint does not state facts sufficient to *constitute* a cause of action" (emphasis added)); *Ward v. Johnson*, 13 Mass. 148, 150 (1816) (holding that where defendants' pleadings alleged that res judicata barred a plaintiff's complaint, the court must consider "whether the facts averred in the pleas ... are, in law, sufficient to *constitute* a substantial bar to the plaintiff's action" (emphasis added)); *Hoosier Stone Co. v. Louisville, N. A. & C. Ry. Co.*, 131 Ind. 575, 31 N.E. 365, 367 (1892) (holding that "a complaint must ... state facts sufficient to constitute a cause of action"). The definition these cases employ is as "usual" as usual gets—if anything, even more so than the majority's. Majority at ——.

Although the majority acknowledges that "allege" has multiple meanings, it calls its chosen definition the "typical[ ]" one. *Id.* at ——. And it suggests that when courts want to convey the meaning I identify, they append adverbs like "adequately" or



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

"plausibly." *Id.* Not so. The Supreme Court has used the term as I do. *See* *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 94, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989) (although a plaintiff claimed that a union violated two statutory provisions, he did not "allege[ ] a violation" of those provisions). So have we. We have held, for instance, that "plaintiffs failed to allege an offense cognizable under" the applicable statute. *See, e.g.*, *Alperin v. Franciscan Ord.*, 423 F. App'x 678, 680 (9th Cir. 2011). We have affirmed dismissals of complaints "for failure to allege a viable cause of action." *Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004). And at other times, we have concluded that a complaint "fails to allege a violation" of a statute because, "under the plain language of the statute," its allegations are insufficient. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967–68 (9th Cir. 2016); *see also* *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1186 (9th Cir. 2025) (holding that a petition "failed to allege" aggrievement, and therefore failed as a matter of law); *Ctr. For Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (holding that a complaint "fails to allege any violation of federal law" because its allegations are legally insufficient).

To be sure, courts sometimes use the broader definition of "allege." For instance, we have dismissed a complaint premised on "alleged violations of California meal- and rest-break laws" for failure to state a claim—in other words, although plaintiffs *alleged* violations, the court still found plaintiffs did not *sufficiently* allege violations. *Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068, 1075 (9th Cir. 2021). It is true, then, that courts sometimes use the unadorned term "allege" to refer to statements of fact and sometimes to include statements of law. *See* Majority at –––– – ––––. So as the majority agrees, two definitions exist—one with a broader remit than the other. Indeed, an opinion cited by the majority, *see id.* at ––––, uses "allege" in *both* distinct senses. *Compare* *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 832 (9th Cir. 2022) (describing the district court's view of what it takes "to allege antitrust injury" and thus state a claim), *with* *id.* (holding that the district court erred in holding that the plaintiff "did not *adequately* allege antitrust injury" (emphasis added)).[4]

4 Similarly, at one point the court asks how the plaintiff "can adequately allege antitrust injury" in one sentence, and, in the next sentence, answers the question by stating: "To allege antitrust injury," the plaintiff "must allege ..." followed by a description of the necessary elements. *PLS.com*, 32 F.4th at 833.

***18** The majority's citation of the above opinions (*see* *Mauia*, 5 F.4th at 1075; *PLS.com*, 32 F.4th at 832) therefore proves little.[5] I agree that there are two different definitions of "allege." For the majority's examples to be informative, we would need decisions where a plaintiff is asked to allege "conduct constituting" a statutory object. And to make it better, add a statutory command that a court "shall" determine whether the statute was satisfied "under applicable" law. On that score, the majority comes up empty-handed. The majority identifies no case where a court describes plaintiffs' legal "allegations' and defers to their bare legal conclusions in deciding whether complained-of facts *constitute* a violation under applicable law. Yet that is what the majority's definition requires.

5 The majority's best attempt to exclude the idiomatic meaning of "allege" is to say that Congress could have chosen a different phrase to convey the same meaning. *See* Majority at –––– – ––––. That bare proposition may be true—but the same goes for the majority's meaning (assert, anyone?), and certainly for *any* hard problem of statutory interpretation. Indeed, puzzles in statutory interpretation are almost always difficult only because the chosen terms are more opaque than a menagerie of alternatives.

The majority's sweeping dispatch of fundamental pleading standards violates another principle of law. We assume that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). Congress passed the FAA to ensure the enforcement of arbitration agreements. *Sandler*, 170 F.4th at 1212. Congress then created an exception to the enforcement of arbitration agreements with the enactment of the EFAA. Exceptions should not be construed to swallow the rule. Yet the majority would do just that. By allowing a plaintiff to get out of an arbitration agreement simply by saying "sexual harassment"—no matter how far-flung his allegations are from satisfying the legal elements for a "sexual harassment" claim—the majority would take a wrecking ball to the federal arbitration-enforcement scheme that Congress enacted. Worse still, if that plaintiff can bundle together in a complaint his purported "sexual harassment" claim with other claims against his



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

employer that do not even purport to be about "sexual harassment," plaintiff's *entire case* would be out of arbitration, not just his "sexual harassment" claim. All a plaintiff needs to do, under the majority's test, is to say the magic words ("sexual harassment") and (poof!) his arbitration agreement vanishes. Nothing in the statutory text requires such an easy route to contractual invalidations.

Perhaps recognizing the extremity of its position, the majority tells us that Rule 11 would provide a sufficient backstop to frivolous assertions. *See* Majority at —— n.13. Such confidence is misplaced. Under the majority's approach, Rule 11 would not prevent an arbitration agreement's invalidation. Stuck in federal court, the defendant would instead have to pursue Rule 11 sanctions at great expense with long odds that such sanctions would be imposed. Even so, Rule 11 would not screen out *nonfrivolous* pleadings that are clearly inadequate. *See* *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002) ("Rule 11(c) allows sanctions" if a filing is "legally frivolous [or] factually misleading").

## C.

The majority raises a few practical concerns with my reading, but such "concerns cannot trump the best interpretation of the statutory text." *Patel v. Garland*, 596 U.S. 328, 346, 142 S.Ct. 1614, 212 L.Ed.2d 685 (2022). I respond to the majority's analysis to emphasize only that such concerns are not nearly so one-sided as it suggests.

***19** The majority worries that if I am correct, a district court adjudicating a motion to compel arbitration would face a tension with ordinary motion-to-dismiss procedures under Rule 12(b)(6). Majority at ——. Normally, a plaintiff who loses on a motion to dismiss may either appeal immediately or amend his complaint. A plaintiff who loses a motion to compel is not so fortunate: instead, he is forced to arbitrate his potentially meritorious sexual harassment claims. *Id.*

This concern should carry no weight with us. Plaintiffs may seek to amend their complaints to add the necessary details once a motion to compel arbitration is filed. *See* Fed. R. Civ. P. 15(a) (providing for amendment "as a matter of course" and otherwise requiring district courts to "freely give leave when justice so requires"). And the absence of an interlocutory appeal from a decision to compel arbitration is *Congress*'s choice, not ours. Employees perhaps eligible for other statutory exemptions from the FAA, like the transportation-worker exception, may be compelled to arbitrate their claims with no immediate right of appeal. *See* *In re Grice*, 974 F.3d 950, 954–55, 959 (9th Cir. 2020) (denying a petition for a writ of mandamus vacating the district court's order compelling arbitration). That is to say, this same argument could be leveled about *any* statutory exemption from the FAA. Congress could have fixed any perceived asymmetry by including an EFAA-specific provision permitting plaintiffs to appeal an order compelling arbitration. It did not do so.

The majority similarly finds it "difficult to understand" why SpaceX wants to compel arbitration before litigating a motion to dismiss. Majority. at ——. I do not. Perhaps SpaceX desires "efficient, streamlined procedures" to "reduc[e] the cost" of meritless cases, "increas[e] the speed of dispute resolution," or keep proceedings "confidential to protect trade secrets" or the unnecessary release of private information. *Concepcion*, 563 U.S. at 344–45, 131 S.Ct. 1740. A motion to compel is the minimum in-court litigation necessary to enforce an arbitration agreement. The majority requires more. And whatever its reasons, SpaceX is entitled to use the procedure Congress enacted.

The majority adds a new practical problem—the risk of waiver. Under the majority's approach, a defendant must first move to dismiss a sexual harassment claim and then, if successful, move to compel the remaining claims to arbitration. But ordinary waiver rules apply to arbitration. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418–19, 142 S.Ct. 1708, 212 L.Ed.2d 753 (2022). And litigating claims on the merits (including by seeking to dismiss those claims), may ultimately support waiver. *See* *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015–16 (9th Cir. 2023) ("[S]eeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum." (citation



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

and internal quotation marks omitted)); *see also* *BSI Grp. LLC v. Ezbanc Corp*, 183 F.4th 956, 958 (8th Cir. 2026) ("Filing a motion to dismiss on the merits substantially invokes the litigation machinery."); *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339–40 (3d Cir. 2023) (finding waiver when a defendant filed multiple "motions to dismiss on the merits"). So there is at least some danger that defendants might prove unable to compel arbitration—not because Congress took that choice away, but because the majority's construction *requires* them to take the kind of step courts may consider a legal waiver.

***20** So if we were to guess how to interpret the EFAA based on practical concerns, we would have, at most, a wash. I would look instead to the words Congress chose. In context of the EFAA, to "allege" conduct constituting sexual harassment means to state facts that, if true, amount to sexual harassment under law.

## III.

Because the district court incorrectly interpreted the EFAA, I would have vacated its denial of the motion to compel arbitration and remanded for it to apply the correct standard. The majority's decision to do the opposite replaces Congress's careful exception to the federal policy favoring arbitration with a gaping door no litigant can miss. I respectfully dissent.

**All Citations**

--- F.4th ----, 2026 WL 3403297

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.