EXHIBIT
Ex. 2
exhibitsticker.com

2026 WL 3562820
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

IKRAM LASSOUED, Plaintiff,
v.
CARNIVAL CORPORATION, LTD., a foreign corporation d/b/a CARNIVAL CRUISE LINE, Defendant.

CASE NO. 26-CV-24759-RAR
|
11/19/2026

**Attorneys and Law Firms**

Julio Jesus Ayala Jr., Crewmember & Maritime Advocacy Center, Coral Gables, FL, for Plaintiff.

William Robert Seitz, Charlotte Ashley Robinson, Mase Mebane & Briggs, P.A., Miami, FL, for Defendant.

RODOLFO A. RUIZ II, UNITED STATES DISTRICT JUDGE

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY**

***1 THIS CAUSE** comes before the Court upon Defendant Carnival Corporation, Ltd.'s Motion to Compel Arbitration and to Stay ("Motion"), [ECF No. 16]. Having considered Defendant's Motion, Plaintiff's Response in Opposition ("Response"), [ECF No. 18]; Defendant's Reply in Support of its Motion ("Reply"), [ECF No. 21]; Plaintiff's Sur-Reply in Opposition ("Sur-Reply"), [ECF No. 24]; Plaintiff's Notice of Supplemental Authority, [ECF No. 39]; the record; and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 16], is **DENIED** for the reasons set forth herein.

## BACKGROUND

Plaintiff Ikram Lassoued, a citizen of Tunisia, was an employee of Defendant Carnival Corporation, Ltd., working as a bar server aboard the vessels *Carnival Paradise* and *Carnival Pride*. Complaint, [ECF No. 1], ¶ 12. During her employment, Plaintiff's supervisor, Milos Paljevic, exploited his position of authority over Plaintiff by subjecting her to unwanted sexual advances. *See id.* ¶¶ 15–28. As part of his inappropriate conduct, Paljevic used sexually charged language to address Plaintiff, questioned Plaintiff about her sex life, and repeatedly invited Plaintiff to have sex with him. *See id.* ¶¶ 17, 23–24. On two separate instances, Paljevic engaged in nonconsensual physical contact with Plaintiff by "squeezing her stomach" while making lewd comments. *See id.* ¶¶ 26–27.

Plaintiff continually informed Paljevic that she was uninterested and did not consent to his harassing conduct. *Id.* ¶ 28. Once Paljevic realized Plaintiff was not going to succumb to his sexual advances, Paljevic directed subordinate managers to strictly scrutinize Plaintiff's work performance in a coordinated effort to target her. *See id.* ¶¶ 29–30. Plaintiff reported this to human resources, and, on December 2, 2025, submitted a separate formal complaint through Defendant's employee compliance reporting hotline regarding the sexual harassment, hostile work environment, and retaliatory treatment she was experiencing.



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*Id.* ¶¶ 32, 34. Despite receiving these complaints, however, Defendant permitted the retaliatory acts to escalate. *See id.* ¶¶ 33, 37. As a result, Plaintiff was subsequently assigned undesirable work schedules and assignments, denied schedule changes routinely afforded to other crewmembers, required to work outdoors in freezing temperatures without adequate protective clothing, and subjected to additional disciplinary action. *See id.* ¶¶ 37, 52. On multiple occasions, Plaintiff was required to perform physically demanding tasks without proper assistance, which caused Plaintiff to sustain injuries. *See id.* ¶¶ 53, 62–64. In January 2026, approximately one month after Plaintiff submitted her formal complaint, Defendant terminated her employment following an internal investigation wherein she further notified Defendant of the retaliatory conduct. *See id.* ¶¶ 38–42.

Plaintiff brings five counts against Defendant: retaliatory discharge under general maritime law (Count I); negligence under the Jones Act, 46 U.S.C. § 30104 (Count II); unseaworthiness (Count III); failure to timely provide complete maintenance and cure (Count IV); and failure to pay wages under the Seaman's Wage Act, 46 U.S.C. § 10313 (Count V). *See generally* Compl.

***2** Defendant moves to compel arbitration and to stay the case pursuant to an arbitration provision in Plaintiff's employment agreement ("Seafarer's Agreement"). *See* Mot. at 1; Seafarer's Agreement, [ECF No. 16-1]. That arbitration provision states:

> **Arbitration**. Except for a wage dispute governed by [Defendant]'s Wage Grievance Policy and Procedure, any and all disputes, arising out of or in connection with this Agreement or Seafarer's service on the vessel...shall be resolved by final and binding arbitration on an individual basis. In addition, Seafarer agrees to arbitrate on an individual basis any and all disputes regarding the existence, validity, termination or enforceability of any term or provision in this Agreement, including but not limited to this provision to arbitrate.

Seafarer's Agreement at 6 (bold removed). The Seafarer's Agreement also includes a choice of law provision declaring "the laws of the flag state of the vessel on which Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of law" to be "[t]he substantive law that governs this Agreement, Seafarer's employment, and Seafarer's and [Defendant]'s relationship" in such arbitration. *Id.*

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"). *See* 9 U.S.C. § 201; *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011). Under the New York Convention, courts of signatory nations, such as the United States, are generally required "to give effect to private arbitration agreements and to enforce arbitral awards made in other signatory nations." *See* *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015).

"In deciding a motion to compel arbitration under the [New York Convention], a court conducts a very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (citation modified). The first task is to determine "whether the parties agreed to arbitrate [the dispute at issue]." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir. 2011) (citation modified). If so, then a court must compel arbitration "so long as (1) the four jurisdictional prerequisites are met and (2) no available affirmative defense under the [New York] Convention applies." *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 546 (11th Cir. 2016). The four jurisdictional prerequisites include: "(1) the agreement is in writing within the meaning of the New York Convention; (2) the agreement provides for arbitration in the territory of a signatory of the New York Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen or the commercial relationship has some reasonable relation with one or more foreign states." *Id.* (citation modified). And "the only affirmative defense to arbitration is a defense



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

that demonstrates the arbitration agreement is null and void, inoperative[,] or incapable of being performed." *Escobar*, 805 F.3d at 1286 (citation modified).

The New York Convention "generally establishes a strong presumption in favor of arbitration of international commercial disputes." *Bautista*, 396 F.3d at 1295. Relatedly, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Princess Cruise Lines*, 657 F.3d at 1213 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). The FAA's "liberal federal policy favoring arbitration agreements," however, may be "overridden by a contrary congressional command." *See* *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citation modified).

## ANALYSIS

***3** Defendant argues that all four jurisdictional prerequisites under the New York Convention are satisfied and, therefore, the Court should compel arbitration so that an arbitrator may decide the arbitrability of Plaintiff's claims in accordance with the Seafarer's Agreement. *See* Mot. at 2– 4. In response, Plaintiff does not dispute that she signed the Seafarer's Agreement or that the jurisdictional prerequisites are satisfied. *See generally* Resp. Instead, Plaintiff argues that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), 9 U.S.C. §§ 401–402, renders the arbitration provision in the Seafarer's Agreement invalid and unenforceable. *See* Resp. at 4–6.

"The EFAA is codified directly into the FAA and limits the scope of [the FAA's] broad mandate to enforce arbitration agreements." *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 84 (2d Cir. 2024). Under the EFAA, a plaintiff "alleging conduct constituting a sexual harassment dispute or sexual assault dispute" may " 'elect to render a predispute arbitration agreement 'invalid and unenforceable.' " *Ding v. Structure Therapeutics, Inc., NASDAQ*, 187 F.4th 1231, 1236 (9th Cir. 2026) (citation modified) (quoting 9 U.S.C. § 402(a)). Plaintiff argues that the EFAA applies here because her "entire case relates to...alleged sexual harassment, nonconsensual sexual contact, and retaliation arising from that harassment." *See* Resp. at 6. Defendant responds that the EFAA is inapplicable to this case because Plaintiff fails to allege a "sexual harassment dispute" within the meaning of the EFAA. *See* Reply 3–7. The Court begins by addressing whether it may decide the threshold issue of arbitrability before turning to whether Plaintiff's factual allegations trigger the EFAA, thereby precluding enforcement of the arbitration provision.

### I. The EFAA Requires the Court to Decide Arbitrability

Defendant argues that the Seafarer's Agreement requires the issue of arbitrability to "be decided by an arbitrator and not this Court." Mot. at 4. It is true that "parties can agree to arbitrate gateway questions of arbitrability because arbitration is a matter of contract." *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018) (citation modified). The EFAA, however, provides that its applicability to an arbitration agreement "shall be determined by a court, rather than an arbitrator[ ] irrespective of whether the agreement purports to delegate such determinations to an arbitrator." 9 U.S.C. § 402(b). Thus, despite the delegation clause in the Seafarer's Agreement, because Plaintiff invokes the EFAA, the Court—not an arbitrator—must decide whether the EFAA precludes arbitration of this case. *See* *Doe (J.K.) v. Celebrity Cruises, Inc.*, 792 F. Supp. 3d 1371, 1377 (S.D. Fla. 2025) ("[T]he Court must decide whether the EFAA bars it from ordering arbitration.").

### II. The EFAA Bars Enforcement of the Arbitration Provision

Defendant argues that the EFAA is inapplicable because Plaintiff's case lacks "a statutory hook tying the EFAA to [her] sexual harassment claims." *See* Reply at 2. In Defendant's view, to trigger the EFAA's sexual harassment prong, Plaintiff must allege a violation of a qualifying Federal, Tribal, or State statute that prohibits sexual harassment. *See id.* at 3–7. The



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Court declines to adopt this interpretation of the EFAA because it restricts the EFAA's applicability beyond what the statute's plain text permits.

In interpreting the EFAA, the Court begins with the statute's text. *See* *Ross v. Blake*, 578 U.S. 632, 638 (2016). The EFAA's operative provision states:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute,...no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

***4** 9 U.S.C. § 402(a). In other words, to fall within the EFAA's scope, a case must (1) "alleg[e] conduct constituting a sexual harassment dispute or sexual assault dispute," (2) be "filed under Federal, Tribal, or State law," and (3) "relate[ ] to the sexual assault dispute or the sexual harassment dispute." *See id.*

The EFAA, in turn, defines the terms "sexual assault dispute" and "sexual harassment dispute." *See id.* § 401(3)–(4). A "sexual assault dispute" is a "dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in [18 U.S.C. § 2246] or similar applicable Tribal or State law, including when the victim lacks capacity to consent." *Id.* § 401(3). Alternatively, a "sexual harassment dispute" is a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). The Court focuses on the meaning of § 401(4) because, as the Parties contest, the EFAA's applicability here depends on whether Plaintiff's allegations constitute a "sexual harassment dispute" under the statute. *See* Resp. at 2, 5; Reply at 3, 7.

For a "sexual harassment dispute" to exist, there must first be a "dispute." *See* 9 U.S.C. § 401(4). As this Court has explained before, Congress's choice to define the EFAA's scope in terms of "*dispute[s]* relating to conduct that is alleged to constitute sexual harassment" rather than "*claims*" is telling. *Id.* (emphasis added); *cf.* *Doe (J.K.)*, 792 F. Supp. 3d at 1378–79 (explaining the significance of the use of the word "dispute" instead of "claim" in 9 U.S.C. § 401(3)). "While a dispute may eventually give rise to a claim, the relationship between the two terms is not one of logical necessity." *Doe (J.K.)*, 792 F. Supp. 3d at 1379. "A dispute—a conflict or controversy— may exist where no one has asserted a right to relief, but for a claim to exist, a right must be asserted." *Id.* Consequently, to determine the EFAA's applicability, the Court must "focus on the *dispute* at issue..., not on the form of the *claims*." *See id.*

Next, to qualify as a "sexual harassment dispute," the dispute must be one "relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). This language is clear, broad, and not limited to any particular cause of action. First, as the Supreme Court has observed, "[t]he phrase 'relating to' sweeps broadly." *Chevron USA Inc. v. Plaquemines Par.*, 608 U.S. 1, 11 (2026); *see also* *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of [the phrase 'relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with[ ]'—and the words thus express a broad pre-emptive purpose." (internal citation omitted)). To satisfy § 401(4), therefore, a dispute must only bear a connection to conduct alleged to constitute sexual harassment. *See* 9 U.S.C. § 401(4); *Morales*, 504 U.S. at 383.

Second, the phrase "conduct that is alleged to constitute sexual harassment," 9 U.S.C. § 401(4), makes clear that the EFAA's applicability to sexual harassment disputes hinges on the facts alleged, not the claims pleaded. This reading aligns with this Court's construction of the EFAA in *Doe (J.K.)*. *See* *Doe (J.K.)*, 792 F. Supp. 3d at 1380. There, this Court explained that § 402(a)'s use of the phrase "alleg[e] conduct constituting a sexual harassment dispute or sexual assault dispute," 9 U.S.C. § 402(a), means that "[i]t is the *conduct* that makes...claims subject to the EFAA, not the other way around." *See* *Doe (J.K.)*, 792 F. Supp. 3d at 1380 (holding that a "sexual assault dispute" under the EFAA "is formed by facts, not claims").[1] Consistent with that interpretation, § 401(4)'s use of the phrase "conduct that is alleged to constitute sexual harassment," 9 U.S.C. § 401(4), similarly indicates that, under the EFAA, a sexual harassment dispute is formed by allegations of conduct



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

(*i.e.*, the facts), not the cause of action. *Cf. Holland-Thielen v. SpaceX*, No. 25-4811, 2026 WL 3403297, at *5 (9th Cir. Nov. 10, 2026) ("[T]o decide if § 401(4)'s definition is satisfied, courts must determine whether the plaintiff's complaint *describes conduct* asserted to be a basis for a sexual harassment claim." (emphasis added)).

[1] Other courts in this District have also concluded that a "sexual assault dispute" under the EFAA depends on the facts alleged rather than the legal theory asserted. *See Doe v. Royal Caribbean Cruises*, No. 24-23953, 2026 WL 1472817, at *6 (S.D. Fla. Apr. 22, 2026), *report and recommendation adopted*, 2026 WL 1470794, at *1 (S.D. Fla. May 26, 2026); *Bulic v. Celebrity Cruises, Inc.*, No. 25-21231, 2025 WL 1783865, at *4 (S.D. Fla. June 27, 2025). As such, "it would be highly unusual if Congress imposed different standards for determining the applicability of the EFAA for sexual harassment disputes and sexual assault disputes." *Doe (J.K.)*, 792 F. Supp. 3d at 1382 n.4.

***5** Finally, the phrase "under applicable Federal, Tribal, or State law," 9 U.S.C. § 401(4), is not limited by any language specifying the cause of action that such law must concern. Nor does it even necessitate that such law take the form of an enacted statute. The plain meaning of the word "law" includes common law. *See Law*, Black's Law Dictionary (12th ed. 2024) (defining "law" as, among other things, "[t]he aggregate of legislation, judicial precedents, and accepted legal principles" and "common law"); *Law*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/law (last visited Nov. 18, 2026) (providing various definitions of "law," including "common law" as one meaning). Moreover, the Supreme Court has found similar statutory phrases to extend to common law claims. *See, e.g.*, *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 522 (1992) ("[W]e have recognized the phrase 'state law' to include common law as well as statutes and regulations."); *Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 128 (1991) (explaining that the phrase " 'antitrust laws and all other law, including State and municipal law'...does not admit of [a] distinction...between positive enactments and common-law rules of liability"); *see also Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972) (concluding that the word "laws" in 28 U.S.C. § 1331 includes federal common law). Thus, § 401(4)'s plain text does not restrict the EFAA's applicability to cases involving a statutory cause of action, let alone a statutory cause of action specifically addressing sexual harassment.

Defendant asks the Court to take a more restrictive reading of § 401(4). Relying on a line of district court decisions interpreting the EFAA's sexual harassment prong, Defendant argues that § 401(4) requires Plaintiff to plead a violation of a Federal, Tribal, or State statute that explicitly proscribes sexual harassment. *See* Reply at 3–7. *See, e.g.*, *Gonzalez v. Carnival Corp.*, 757 F. Supp. 3d 1314, 1321–22 (S.D. Fla. 2024); *K.T. v. A Place for Rover*, No. 23-02858, 2023 WL 7167580, at *4–5 (E.D. Pa. Oct. 31, 2023); *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023). These decisions have read the phrase "to constitute sexual harassment under applicable Federal, Tribal, or State law" to modify the term "alleged" in § 401(4), thereby rendering "the EFAA inapplicable where there has not been an allegation that such conduct violated a law prohibiting sexual harassment." *See Yost*, 657 F. Supp. 3d at 585; *accord Gonzalez*, 757 F. Supp. 3d at 1321–22 (agreeing with *Yost's* analysis); *K.T.*, 2023 WL 7167580, at *4–5 (same).

Although such cases could constitute persuasive authority, they are not binding on the Court. *See Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022) ("[A] district court's decisions do not bind other district courts, other judges on the same court, or even the same judge in another case."). Nor does the Court deem them persuasive. As explained, § 401(4) imposes no requirement that Plaintiff bring her claim under a statute explicitly prohibiting sexual harassment. *See* 9 U.S.C. § 401(4). The absence of such a requirement is significant. *See Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) ("[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant."). *Yost's*, *Gonzalez's*, and *K.T.'s* interpretations, therefore, effectively add a condition that does not exist in § 401(4)'s text. *See* 9 U.S.C. § 401(4). The Court cannot follow that approach. *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009) ("[W]e are not allowed to add or subtract words from a statute; we cannot rewrite it."); *see also EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) ("The problem with [respondent's] approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought to be a desirable result. That is Congress's province.").



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

The canon against surplusage, which reflects "the idea that 'every word and every provision is to be given effect,' " also disfavors Defendant's narrow reading. *See* *Nielsen v. Preap*, 586 U.S. 392, 414 (2019) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012)). Under § 402(a), a plaintiff's "case" must "relate[ ] to...the sexual harassment dispute." 9 U.S.C. § 402(a). "In this phrase, the 'case' is something separate and apart from the sexual [harassment] dispute underlying it." *See* *Doe (J.K.)*, 792 F. Supp. 3d at 1381. Thus, "if 'sexual [harassment] dispute' meant an alleged violation of a particular law prohibiting sexual [harassment], this requirement would be superfluous," as "[t]he 'case' would always 'relate[ ] to' the sexual [harassment] dispute when the plaintiff alleges a violation of a particular law prohibiting sexual [harassment]." *See id.; see also* *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

***6** Further, this Court is not the first to recognize that the EFAA does not require a plaintiff to "expressly style their claim as one for sexual harassment." *See* *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 536 (S.D.N.Y. 2024), *aff'd on other grounds*, 193 F.4th 219 (2d Cir. 2026); *see also* *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 181 (S.D.N.Y. 2023) (addressing the EFAA's sexual harassment prong and observing that "there is nothing in the text of the EFAA that suggests its applicability hinges on how a claim is labeled"). As relevant here, courts have found that "retaliation resulting from a report of sexual harassment is related to conduct that is alleged to constitute sexual harassment" and thus qualifies as a "sexual harassment dispute" under the EFAA.[2] *See* *Olivieri*, 112 F.4th at 91–92 (citation modified) (quoting 9 U.S.C. § 401(4)) (finding retaliation-based hostile work environment claims under Title VII and state law fell within the EFAA's scope); *Usai v. Club Mgmt. Mia. II, LLC*, 801 F. Supp. 3d 1295, 1308–09 (S.D. Fla. 2025) (applying the EFAA to retaliation claims brought under Title VII, state law, and a county ordinance, and observing that "the EFAA generally applies to retaliation claims based on reporting sexual harassment"); *see also* *Holland-Thielen*, 2026 WL 3403297, at *11 (rejecting argument that EFAA did not apply to state employment law claim, in part, because "retaliation for opposing alleged sexual harassment falls within [§ 401(4)'s] definition"). Although Plaintiff does not specifically plead a retaliation claim under Title VII, a state statute, or a county ordinance as in *Olivier*, *Usai*, and *Holland-Thielen*, the Court finds this authority persuasive as Plaintiff alleges that she experienced a hostile work environment and retaliation after reporting sexual harassment, *see* Compl. ¶¶ 32–35, 37, 52–53, and the EFAA's applicability hinges on the factual allegations, not the claims pleaded. *See* *Delo*, 685 F. Supp. 3d at 181.

2 Importantly, "[t]he issue on such a [retaliation] claim is whether the plaintiff was retaliated against for reporting sexual harassment, not the plausibility of the underlying harassment claim." *Diaz-Roa*, 757 F. Supp. 3d at 536; *accord* *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) ("To recover for retaliation [under Title VII], the plaintiff need not prove the underlying claim of discrimination which led to her protest, so long as she had a reasonable good faith belief that the discrimination existed." (citation modified)).

Citing the Seafarer's Agreement, Defendant makes one additional argument to preclude application of the EFAA. According to Defendant, Plaintiff cannot invoke the EFAA because the Parties' choice of law provision renders her claims "subject to Bahamian law—not applicable 'Federal, Tribal, or State law' as § 401(4) expressly requires."[3] *See* Reply at 5. This argument, however, misconstrues the Court's role in determining the EFAA's applicability. As discussed, the existence of a "sexual harassment dispute" under the EFAA turns on whether conduct is "*alleged* to constitute sexual harassment under applicable Federal, Tribal, or State law."[4] 9 U.S.C. § 401(4) (emphasis added); *see also* *Holland-Thielen*, 2026 WL 3403297, at *5 (explaining that the word "allege" in section 401(4) "requires only an assertion, which may or may not eventually be proven meritorious"). If so, and if that conduct relates to a case filed under Federal, Tribal, or State law, then, at a plaintiff's election, a court may not compel arbitration. *See* 9 U.S.C. § 402(a). Whether the merits of Plaintiff's claims are ultimately governed by foreign law under the Parties' contract, therefore, is a question separate and distinct from the Court's analysis under the EFAA and may be decided at a later stage in the litigation. In other words, the Court may determine whether the EFAA bars



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

enforcement of the Seafarer's Agreement's arbitration provision without resolving which law governs the merits of Plaintiff's claims.

3 Plaintiff disputes whether Bahamian law would govern under the choice of law provision. *See* Sur-Reply at 4. Because the Court finds that Defendant's choice of law argument is not relevant to the determination of the EFAA's applicability, the Court need not address the issue at this juncture.

4 Courts apply Federal law in making this determination. *See* 9 U.S.C. § 402(b) ("An issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law.").

***7** Accordingly, the Court finds that Plaintiff's case falls within the scope of the EFAA. The EFAA applies where a case (1) "alleg[es] conduct constituting a sexual harassment dispute," (2) is "filed under Federal, Tribal, or State law," and (3) "relates to...the sexual harassment dispute." *See id*. First, Plaintiff alleges a sexual harassment dispute as she claims to have experienced retaliation after reporting sexual harassment and a hostile work environment. *See* Compl. ¶¶ 32– 35, 37, 52–53; *Olivieri*, 112 F.4th at 91–92; *Usai*, 801 F. Supp. 3d at 1308–09; *see also* *Holland-Thielen*, 2026 WL 3403297, at *10–11. Second, she brings her case under federal law, including general maritime law, the Jones Act, and the Seaman's Wage Act. *See generally* Compl. Lastly, her case directly relates to the sexual harassment dispute. Count I asserts sexual-harassment-based retaliatory discharge and Counts II–IV are expressly connected to injuries Plaintiff suffered as a result of the retaliatory acts she incurred. *See* Compl. ¶¶ 45–58, 62–67, 72–74, 83, 88–96. Therefore, because Plaintiff invokes the EFAA and her case satisfies all three statutory requirements, the Court cannot compel arbitration.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion, [ECF No. 16], is **DENIED**. Defendant shall file an answer to Plaintiff's Complaint, [ECF No. 1], on or before **December 10, 2026**. Further, the Court's stay of discovery, *see* [ECF No. 32], is hereby **LIFTED**.

**DONE AND ORDERED** in Miami, Florida, this 19th day of November, 2026.

**RODOLFO A. RUIZ II**

**UNITED STATES DISTRICT JUDGE**

**All Citations**

Slip Copy, 2026 WL 3562820

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.



WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.